## THE REPRESENTATIVE BUS CO. v. SIMMONS.

*Negligence—Bus driver, on signal, must give way to vehicle in rear, when—Question for jury—Bus driver's excessive speed and carelessness when approaching car passing— Motion for new trial filed after three days stricken from files—Counsel's being misled by official court publication not unavoidable cause—Verdict of $10,000 to dancing teacher not excessive, when.*

1. It is duty of bus driver, on hearing signal by one desiring to pass, to give way, without any peril to himself and passengers, to the vehicle in the rear, where the roadway is sufficient to allow passage in safety.

2. In action by automobile occupant for injuries from collision with bus refusing to permit automobile to pass on proper signal, evidence *held* to warrant submission to jury question of excessive speed of bus and of careless driving by bus driver.

3. Motion for new trial, which was not filed within three days, was properly stricken from the record, and allegation that counsel was misled by official publication does not show that failure to file was due to unavoidable cause.

4. Award of $10,000 for injuries to woman whose face was seriously cut and scarred, portion of nose cut away, and who suffered concussion of brain and injuries to shoulder, back, chest, and legs, preventing her from pursuing her vocation as dancing teacher, *held* not excessive.

(Decided September 26, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. W. H. McMorris*, for plaintiff in error.
*Mr. Geo. W. Spooner*, for defendant in error.

SULLIVAN, P. J.  This cause comes into this court on error from the court of common pleas of Cuyahoga county, in which court judgment was pro-

nounced in favor of Emilie Simmons upon rendition of a verdict in the sum of $10,000 against the Representative Bus Company, because of alleged personal injuries growing out of an accident occurring January 19, 1924, while plaintiff, a passenger in the rear seat of an automobile driven by her husband, was going east on Lake road, Cuyahoga county.

It appears from the record that at about 12:30 or 1 p. m. on said date, the plaintiff, with her husband and two sisters, was riding towards Cleveland, when a large passenger bus owned and controlled by defendant was ahead of them, which, whenever the plaintiff's husband attempted to pass the bus, would do what is known as "hogging" the road, in consequence of which it was almost impossible for the automobile to pass the bus. However, when both vehicles were approaching what is known as stop 19, the husband again signaled the driver of the bus of his intention to pass, whereupon the bus driver, as is established by credible evidence, aware of the situation and the attempt to pass, and with full knowledge of the signal, and while the automobile was attempting to drive around the bus, guided the bus to the left, obstructing the passage of the automobile, so that it was necessary for the husband to drive off the paved 16-foot roadway with his two left wheels, and then, when the fore part of the automobile was passing the bus, the driver of the bus again turned sharply to the left, and then and thereby collided with the automobile in which plaintiff was riding, which resulted in its colliding with another automobile, and being forcibly crushed into a telephone

pole, throwing plaintiff out of her seat, and injuring her seriously.

There is but one conclusion from this record, and that is that the bus driver wantonly and recklessly drove the vehicle which attempted to pass on a road where the width was sufficient for passage into a situation where great bodily harm and death were imminent, and it was done at a time when the third vehicle produced a situation from which the plaintiff below could not be extricated. It was the duty of the bus driver, upon hearing the signal, to give way, without any peril to himself and the passengers, to the vehicle in the rear, because there was roadway sufficient to allow passage in safety; but to attempt to prevent being passed by such reckless disregard for life and property as this record discloses is almost appalling, and that death did not result, and a manslaughter case ensue, is no fault of the driver of the bus.

Error is charged in that the court misapplied the statute as to the speed of automobiles, and particularly the speed of such vehicles as the bus in question. A reading of the record, however, discloses that there was a basis for submitting to the jury, not only the question of speed, but also the question of careless driving, and this conclusion is readily reached from a perusal of the following testimony of the driver of the bus:

"Q. Did you at any time operate, on this trip, your car at a speed other than 22 miles an hour? A. Yes.

"Q. At what other speed did you operate it? A. Anywhere from 20 to 28 miles an hour."

Plaintiff's witnesses place his speed at from 28 to 30 miles an hour.

The bus driver "hogged" the road, and would not let plaintiff's husband pass, even on signal, as shown by the record, and, even though said paved portion of the road was approximately 16 or 18 feet wide, he forced plaintiff's husband to drive off the pavement in his attempt to pass.

He did not drive or control his bus in a straight line when plaintiff's husband was attempting to pass him, but turned said bus so as to collide, the front part of his bus striking the rear right-hand side of the automobile. (Record, pp. 9, 29, 39, 46, 48, 58, 59, 67, 83.)

The bus driver's carelessness in the premises is also made apparent and his speed is demonstrated by the fact in evidence that the bus went 100 feet or more before stopping after the collision. (Record, p. 9.)

We quote the following testimony (Record, p. 40):

"Q. How far, if any distance, did the bus go after that? A. It went about 147 feet."

On page 60 of the record the following appears:

"Q. How far did the automobile bus go after the collision? A. Well, it went to the top of the hill.

"Q. How far in feet? A. About 100 feet."

We quote further from page 204 of the record:

"Q. Your pull was from the right to the left, wasn't it, Arthur, answer that? A. Yes."

And from page 201 of the record:

"Q. You knew he was going around you, didn't you? A. Yes."

Consequently, we do not feel that there was any prejudicial error in the charge of the court in this respect.

It is also charged that there was error in strik-

ing the motion for a new trial from the record. We do not think there was any error here, for it appears that no motion for a new trial was filed within three days, under that interpretation which the courts have universally given the statute. This is practically conceded by able counsel for plaintiff in error, but he alleges that he was misled by the official publication in what is known as the Legal News, which is the official organ of proceedings in court. We do not think that this circumstance placed the question within the category of unavoidable causes, and hence we think there is no error in this respect.

It is also charged that the verdict and judgment are excessive in amount. After reading of the injuries of Mrs. Simmons, as disclosed by the record, we cannot say that the amount is excessive. The incidents of the collision resulted in a temporary and permanent menace to the physical and mental condition of the plaintiff. Her face was cut and scarred, a long diagonal cut running from the roots of the hair across her face and nose, and the cuts and lacerations upon her arm were so serious that the muscles and the upper portion thereof were exposed. It also appears that an unsightly scar 3½ inches long remains. Her nose was torn open, part of it cut away, and one nostril so injured as to interfere with her breathing. Her right cheek and left temple were lacerated. Her left eye was injured. Her shoulder, back, chest, and abdomen were hurt, and her legs were bruised. It appears further from the record that she suffered concussion of the brain, and the blow on her scalp was so serious that it required stitches and clipping. It also appears from credible evidence

that there was a prolapsus of the uterus, and this was a serious injury resulting from the accident, because the plaintiff was a dancing teacher, and in good health before the accident, and it appears that, since the accident, the soreness and lameness have prevented her from pursuing her vocation, while in the meantime she suffers much pain.

With all this objective evidence of injuries, and the consequent general shock of the collision, it cannot be said that the verdict is excessive. In other words, under such state of the record we would not be justified in setting the verdict aside on the ground that it is excessive in amount.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.