IRONSIDE v. IRONSIDE et al.

No. 29467.   Sept. 10, 1940.

Rehearing Denied Dec. 17, 1940.

*108 P. 2d 157.*

Butler & Rinehart and Mart Brown, all of Oklahoma City, for plaintiff in error.

Oran McCain and Roy F. Ford, both of Tulsa, for defendant in error.

DANNER, J. Plaintiff was a passenger in an automobile being driven toward the east on a paved country highway by her sister, the defendant Bertha Ironside. The defendant Hopper was driving his car in the same direction, and following the Ironside car. Hopper attempted to pass the Ironside car, and a 3-car collision occurred, the defendant Wendell having in the meantime approached from the opposite direction in his car. The plaintiff sustained personal injuries for which she recovered a verdict against the defendants Ironside and Hopper, followed by a judgment against all three defendants. (It appears that the parties have overlooked the fact that the journal entry erroneously quotes the verdict, and that said journal entry provides for judgment against "the defendants, and each of them" in spite of the failure of the jury to make a finding either for or against the defendant Wendell.) The defendant Ironside appeals, and her contention is that the verdict and judgment against her are

not reasonably sustained by any competent evidence.

Much of the argument of plaintiff in error is devoted to showing the negligence of defendant Hopper, the driver of the rear car. Hopper's negligence was established and a verdict and judgment entered thereon. His negligence must be conceded. That, however, is not the question. The question is whether the driver of the car in which plaintiff was riding was also negligent, and, if so, whether there was causal connection between that and the plaintiff's injury. A defendant cannot escape responsibility for negligence in operating an automobile by merely showing that another, sued as a joint tort-feasor with defendant, was also responsible. Price v. Burton, 155 Va. 229, 154 S. E. 499. The defendant would still have the duty of meeting any prima facie showing of his own negligence contributing to the injury, or, in the appellate court, of demonstrating the lack of evidence to support a finding of his negligence, and, of course, causal connection. It is therefore important that attention to the controlling point in the case (that is, negligence, if any, of the driver of the leading car, in which plaintiff was riding) be not lessened or dimmed by considerations of comparative negligence of the two drivers.

The negligence of the driver of the leading car, and causal connection between that and the injury to plaintiff riding in the same car, are predicated upon the combined effect of two acts of commission on her part: First, intentionally accelerating the speed of her car to prevent the rear car from passing, after the driver of the rear car was already committed to the task of passing, and after having knowledge both of his presence and intention and of the approach of the Wendell car; second, simultaneously veering her car to her left for a short distance, probably a foot or a foot and a half.

Once before, the rear car had attempted to pass, and the defendant speeded up, whereupon the rear car retarded and drew back in line behind her. On the occasion of the accident he again attempted to pass, and according to her own testimony and that of two or three other witnesses, she again speeded up, because, as she testified, she did not want him to pass. The front of his car was advanced alongside to about the middle of her car; she looked at him, accelerated the speed, and at the same time veered her car to the left, in his direction. At this time the defendant Wendell's car was approaching from the east, and came out of a dip which had momentarily concealed it, a short distance in front. The driver of the rear car applied his brakes and his car veered to the right, so that his right front bumper came in contact with the left rear fender or bumper of the leading car. This caused the leading car to proceed on an angle across the pavement to the left, into the oncoming vehicle, hence the wreck.

The jury was authorized to believe, from the evidence, that but for her willful and sudden acceleration of speed the rear car would have passed within time to avoid the accident. The jury also had basis for disbelieving, if it wanted to, the explanation offered by her at one place in her testimony, as to why she did not want the rear car to pass, namely, that she speeded up so that he could fall in behind her and avoid the forthcoming collision. In view of the fact that she had shortly before speeded up in a like manner, upon his attempt to pass, and further in view of the manner in which the testimony was elicited from her, the jury evidently discounted it almost entirely. We here set it forth, as a good example of questions so leading and suggestive that, although unobjected to, the jury might justifiably have given it very little credence:

"Q. Miss Ironside, as I understand it, as you went along that road, you were on your right side, weren't you? A. Yes, I was. Q. Now, you saw the car coming towards you, the Wendell car, didn't you? A. Yes. Q. You saw the Wendell car coming, didn't you? A. Yes. Q. You knew that Mr. Hopper was behind you,

didn't you? A. Yes, sir. Q. And you knew he was fixing to pass, didn't you? A. Yes, I did. Q. You knew that if he got up alongside of you, with that Wendell car coming, that the three of you could not get by, didn't you? A. Yes. Q. And that is the reason you didn't want him to pass you, isn't it? A. Yes, it was."

Possibly the jury considered this as in substance being more the testimony of the questioner than of the witness. In view of the manner in which it was drawn from the witness, plus its inconsistency with her conduct when the rear car had previously attempted to pass, on which occasion she had likewise speeded up, and further recognizing that the distance between the two cars and the oncoming car when the rear car first began the attempt at passing might have played some part in the jury's appraisal of the situation, we would be loath to hold that the jury was bound by this testimony. Undisputed credible testimony not inherently improbable is generally binding on a court or jury, but evidence is not regarded as undisputed if it is at variance with the facts and circumstances of the case or reasonable inferences to be drawn therefrom. Wise v. Wise, 175 Okla. 310, 52 P. 2d 715; Carlisle v. State ex rel. Harris, 178 Okla. 231, 62 P. 2d 617; Burkhart v. Lasley, 182 Okla. 43, 75 P. 2d 1124; McClendon v. Kennedy, 182 Okla. 153, 77 P. 2d 15. A jury may accept circumstantial evidence on the one side, and reject positive testimony on the same point on the other side. Reed v. Scott, 50 Okla. 757, 151 P. 484.

Whether a judgment is sustained by the evidence depends not only upon the evidence, but also upon applicable rules of law. In respect to the latter, we first consider our statutes. Rule 6 of Rules of the Road, section 10327, O. S. 1931, 69 Okla. St. Ann. § 583, provides that all motor vehicles before passing other vehicles from the rear shall give notice of approach by a horn or other signal before passing, but that the leading vehicle shall be required when signaled to turn to one side and give half the road. The testimony was that the rear driver sounded his horn, that the front driver knew he was attempting to pass, and looked at him. That section, however, is not of much help in this particular case, due to the fact that the overtaken car did give "half the road," although at the same time swerving to her left. Chapter 113, section 14, p. 240, S. L. 1933, 47 Okla. St. Ann. § 92, requires that any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other conditions then existing, and that no person shall drive at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead. Generally, whether a driver is guilty of excessive speed under this section depends upon the conditions specified or contemplated in the statute, and the physical conditions existing at the time and place of the accident, and is a question for the jury. Townsend v. Cotten, 180 Okla. 128, 68 P. 2d 790; Taylor v. Ray, 177 Okla. 18, 56 P. 2d 376. However, we need not predicate our decision expressly or wholly upon either of those sections, for if a defendant is negligent as measured by the general rules of law he may be held liable even though technically the statute was not violated. Tully v. Wetzel, 97 Okla. 22, 222 P. 539. We therefore shall also consider case law on the subject.

The reciprocal duties of drivers of automobiles proceeding in the same direction are treated in annotations at 24 A. L. R. 507, 47 A. L. R. 703, 62 A. L. R. 970, and 104 A. L. R. 485; but therein no subdivision, and but two cases, are included wherein the front driver accelerated his speed coincident with the rear driver's attempt to pass. We have found only three or four such cases. The following may also be examined: American Digest System, "Highways," Key Numbers 176 et seq., "Automobiles," Key Numbers 168(10), 172(5), 200, 244(12)(44), 245(15)(43)(48); 42 C. J. 928, 932, 952; 5 Am. Jur. 659; 2

Blashfield's Cyc. Auto. L. and P., page 78.

It is obvious that the question in the present case is not concerned with whether there is a duty upon the forward driver to reduce his speed (an omission) in order to facilitate passage. Here the driver increased his speed, but for which there would have been no wreck, according to the evidence; and that is an act of commission.

It is not true that the forward driver, knowing of the presence and especially of the intention of the rear driver, owes no duty to the rear driver. All such dogmatic statements are dangerous, due to the fact that what is the exercise of reasonable care must necessarily depend upon the facts of the particular case, which facts are capable of great variety and innumerable combinations. Rather, we prefer the more reasonable statement from 2 Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.) p. 78, sec. 934, under the heading "Care Required from Overtaken Vehicle During Passing," where it is said:

"The measure of the duty of the driver of a motor vehicle towards the driver of a car attempting to pass him from the rear necessarily depends on the condition of traffic and other circumstances. Conceding a driver's right to use any portion of the highway open to him, and which circumstances, or his desires, may prompt him to use, his rights are necessarily subject to equal rights on the part of other users of the highway."

Certainly in a case where the overtaken driver knows of the rear driver's intention, the quoted principle is reasonable in theory and in practice. It is supported by the following authorities: Raddant v. Mims, 89 Cal. App. 101, 264 P. 588; Levesque v. Pelletier, 131 Me. 266, 161 A. 198; Seymour v. Dunville, 265 Mass. 78, 164 N. E. 79; Stork v. Barbour Flax Spinning Co., 5 N. J. Misc. 837, 138 A. 509; Stevens v. Rostan, 196 N. C. 314, 145 S. E. 555; Representative Bus Co. v. Simmons, 26 Ohio App. 367, 159 N. E. 846; Piper v. Adams Express Co., 270 Pa. 54, 113 A. 562; Stanhope v. Strang, 140 Wash. 693, 250 P. 351. It was said in Curtis v. Perry, 171 Wash. 542, 18 P. 2d 840, that though a motor vehicle driver has a paramount duty to keep a lookout ahead, and may assume that drivers following from the rear will observe the laws of the road, he cannot entirely ignore vehicles in the rear.

Many instances of the leading car's swerving to the left as another car is passing, or of "hogging" the road, and such like, may be found, particularly in the above-cited annotations. Underlying all such decisions, and also inclusive of the instant case, is the common principle quoted above, namely, that the leading driver's rights are subject to equal rights on the part of other lawful users of the highway, and that the measure of his duty is governed by the particular situation at hand. If he exercised reasonable care under all of the circumstances of the particular case, he is not liable; if he failed to do so, and this contributed to the injury of another, the reverse is true.

Narrowing the inquiry now to instances involving increase of speed of the leading driver when the rear driver is in the act of passing, it might first be noticed that the mere act of passing another car, if it is done in a safe manner and at a safe time and place, is not ordinarily culpable and is in fact a very frequent occurrence. Otherwise highways would remain highly congested. That truth is not affected by the fact that the overtaking driver in the particular case before us was negligent. The fact still remains that, because of defendant's having accelerated her speed after the rear driver was already committed to the act of passing, there was an accident, and without which there would have been no accident. Since she did accelerate it, he was unable to get around her, and both were found negligent. It appears to be a case where the original act of starting around her car might not have been negligent, but persistence in the attempt after she had increased speed did become negligence.

A case in point is Oppenheimer v. Linkous' Adm'x, 159 Va. 250, 165 S. E. 385, wherein the leading driver speeded up to keep the other car from passing him, the other car accepted the challenge, and it turned into a race, much as in the instant case. The overtaking car struck and killed a pedestrian and both were held liable. The court said that the driver of the leading car,

"—when signaled, should have yielded the road to the following car, but as a man of mettle it ill became him to be passed by a mere Pierce Arrow and a 1926 model at that. He turned on more gas and went hurtling down the road and into town at a speed increased and reckless. It is difficult to dispassionately characterize his conduct. That these two cars were racing is too plain for argument. They were joint tort-feasors and are jointly and severally liable. * * * Highways are not race courses and to so use them is a public peril. * * * Ordinarily it is for the jury to say if the acts complained of were such as were calculated to endanger the safety of foot passengers and if the defendants were acting in concert. * * * For him it is said that 'although his chauffeur was driving at an excessive rate of speed at the time of the accident, that his car kept on the right hand side of the road, did not strike or otherwise injure the plaintiff, that he was only violating the traffic laws, which violation was not the proximate cause of the injury'. * * * If these men, however, had not been racing Linkous would be alive today. His death is directly due to the failure of Oppenheimer's chauffeur to note the passing signal from the Smoot car. He saw fit to invite a race which was not only a proximate cause of the accident, but the sole proximate cause. A child should have anticipated that some pedestrian might be struck in the street."

Where a driver speeds up to keep a rear motorist from passing, and succeeds, as was done in the present case, and the rear motorist again attempts the feat, as in this case, and the leading driver again accelerates to keep him from passing, and in the second attempt several hundred yards are consumed, as borne out by the records herein, it plainly amounts to an invitation to a race, on the part of that driver, if not a race itself. Certainly it was sufficient in this case to go to the jury on the question whether such conduct was exercise of reasonable care in the use of a public highway.

In Rogers v. Interstate Transit Co., 212 Cal. 36, 297 P. 884 (certiorari denied 284 U. S. 640, 76 L. Ed. 545, 52 S. Ct. 22), the court held that negligence on the part of the leading driver was the proximate cause of the collision, and plaintiff's judgment was affirmed, where plaintiff repeatedly signaled to pass but the leading driver refused to yield, and, when plaintiff thereafter was almost past him, he accelerated his speed and collided with the passing car. The court further applied the last clear chance doctrine as against him, assuming that in the first place the plaintiff was negligent in attempting to pass.

The duty of the leading driver not to increase his speed while another is attempting to pass him (unless, of course, the exigencies of the situation demand it) is so strong, and public safety so connected therewith, that some of the states have statutes expressly forbidding it. See 2 Cyc. of Automobile Law and Practice (Blashfield) page 79.

In Swinkels v. Wisconsin Michigan Power Co., 221 Wis. 280, 267 N. W. 1, it was held, however, that the driver of the leading vehicle who increased his speed was not liable to an overtaking motorist who was injured thereby, since the leading driver did not hear the rear driver's signal to pass or know of his intention.

In view of the acceleration of speed and the veering somewhat to the left by the leading driver, knowing of the rear driver's position and his intention to continue to pass on around, and her statement that she purposely speeded up because she did not want him to pass, and the other circumstances present and connected therewith, we are unable to say that reasonable men would all agree that she acted as the ordinarily careful and prudent person would have acted under the same or similar circumstanc-

es. That being the case, we must hold that the trial judge was correct in letting the matter go to the jury, and that there is not an absence of any competent evidence reasonably tending to sustain the verdict. Whether or not the driver of the overtaken car used due care is ordinarily a question for the jury. Kittrell v. Wilkerson, 177 Ark. 1174, 9 S. W. 2d 788; Dahl v. Moore, 169 Wash. 443, 14 P. 2d 28; Grubbs v. Grayson, 165 Wash. 548, 5 P. 2d 1033; Y. & Y. Operating Co. v. Pugh, 179 Okla. 198, 65 P. 2d 186; I. T. I. O. Co. v. Johnson, 177 Okla. 288, 58 P. 2d 888; Shell Petroleum Corp. v. Perrin, 179 Okla. 142, 64 P. 2d 309.

Much of the foregoing has overlapped with the question of proximate cause. There is little difficulty on this phase of the case. It has already been shown that there was sufficient evidence of negligence on the part of the defendant. Her negligence served its part in bringing on the collision, the evidence being virtually undisputed that if defendant had not increased her speed at that particular time, the passing car would have made it safely around her. The plaintiff obtained her injuries as the direct result of the ensuing collision. The fundamental rule is that if the concurrent negligence of two or more persons causes an injury to a third person, they are jointly and severally liable, and the injured person may recover against them both.

The judgment is affirmed.

BAYLESS, C. J., and CORN, GIBSON, and DAVISON, JJ., concur.