**Fannie Lou LAWSON, Plaintiff-Appellant,**

v.

**COMMERCIAL CARRIERS, INC., a Corporation, and Harvey Lee Baxter, Defendants,**

**Commercial Carriers, Inc., a Corporation, Defendant-Respondent.**

No. 32013.

St. Louis Court of Appeals.

Missouri.

Dec. 21, 1965.

Rehearing Denied Jan. 19, 1966.

Application to Transfer Denied March 14, 1966.

Donald S. Hilleary, Clayton, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, F. Douglas O'Leary, St. Louis, for defendant-respondent.

BRADY, Commissioner.

The jury returned a verdict in favor of the plaintiff and against the defendants in the amount of $15,000.00, whereupon the defendants filed motions for new trial. Both motions for new trial were overruled, but the trial court sustained the alternative motion of the defendant Commercial Carriers, Inc., for judgment in accordance with its motion for a directed verdict and entered judgment in its favor. Baxter did not file an appeal and we will refer to Commercial Carriers, Inc., as "the defendant." The defendant's driver will be referred to by that designation and by his name, Morris.

The plaintiff was a passenger in Baxter's automobile traveling in a generally southwardly direction. The highway upon which they were traveling was hilly and had many curves. About four or five miles from the scene of this accident, Baxter came up behind the defendant's tractor trailer being operated in the same direction as he was going. This vehicle was later proved to have been operated by Morris who was generally familiar with this highway having traveled it many times. It was about midnight and very dark. After following the tractor trailer for three or four miles, they came to a no passing zone marked by a yellow line as there was a curve just ahead. The highway at this point consisted of a long sweeping curve with a sharper bend in the middle of it. Baxter pulled out from behind defendant's vehicle and drew abreast of the defendant's vehicle when about 200 feet from this sharp

curve. He then pulled ahead of the defendant's tractor trailer and cut back sharply to the right. Upon doing so he lost control of his vehicle and began sliding sideways down the highway in front of the tractor trailer which overtook his automobile and collided with it striking the left side. The plaintiff's personal injuries resulted from this collision.

The specific facts set out in her brief upon which the plaintiff relies are as follows: the pavement was twenty feet wide with a lip on each side; this occurred at midnight when it was "pitch" dark; there was no sign indicating a curve except for a yellow line which indicated a no passing zone; Baxter was traveling sixty miles per hour and the defendant's vehicle was proceeding at fifty miles per hour while Baxter was attempting to pass; Morris indicated he could stop in 1/16 of a mile; Baxter had difficulty negotiating the curve at his speed and lost control; and that Morris did not slow his vehicle prior to the time when Baxter cut in. There is no real dispute concerning these facts. However, plaintiff states and seeks to rely upon other pertinent facts that are disputed. The first of these is plaintiff's contention that Baxter's automobile and the defendant's tractor trailer were "abreast of each other for 850 feet from the point of the collision." The defendant contends the evidence does not support that statement. The plaintiff arrives at this figure by combining Baxter's testimony that he came abreast of the defendant's tractor trailer when he was 200 feet from the curve with the state trooper's testimony that the curve was 650 feet long. Those two items of testimony cannot be so combined. The undisputed testimony is that this was a long sweeping curve with a sharp bend in the middle of it. It is clear from the transcript that the trooper was speaking of the beginning of this long sweeping curve. On the other hand, Baxter was speaking of the sharp bend or curve that caused him to lose control as just previous to the testimony upon which plaintiff relies Baxter had stated he did not no-

tice the yellow line until he got abreast of the tractor trailer, a clear indication it had begun sometime earlier, and he therefore had been into the long sweeping portion of this curve some unspecified time prior to that. He went on to describe the place he was 200 feet away from as "a sharp curve." It is not possible to determine from this record what distance prior to the collision these vehicles traveled abreast of each other, but the evidence cannot be interpreted as supporting the statement that distance was 850 feet.

■ The plaintiff also asserts that although she made Morris her witness and offered his testimony as a part of her case in chief, she is not bound by his testimony as to Baxter's position when he applied his brakes. Plaintiff does not deny that Morris testified that he applied his brakes as soon as Baxter started to cut in, but she contends that Morris testified he did not know how far in front of his vehicle Baxter was when he cut in. That view of the evidence is not substantiated when Morris' testimony is read in context. His testimony was that the back bumper of Baxter's automobile was about equal with the front bumper of defendant's vehicle when Baxter " * * * cut back sharply to the right to get in the right-hand lane * * * " and that he immediately took his foot from the accelerator, applied his brakes "hard," and kept them applied until the impact. Later he was asked: "Now, how far up in front of you would you say this automobile got before he started to cut sharply back into your lane, or his lane?" His answer was: "He was so close when he cut back in I thought he was going to hit me. I couldn't say how far he was in front of me." It is obvious that this later testimony is not contradictory of that previously given but is merely an acknowledgment that he could not estimate in feet, yards or whatever method of measurement might be applied the distance between Baxter's rear and his front bumper. The plaintiff is bound by Morris' testimony that Baxter cut back to the right in front of defendant's vehicle

when Baxter's rear bumper was approximately even or very slightly ahead of the tractor trailer's front bumper.

The plaintiff also contends that the curve was sharp and blind. We have already commented upon the configuration of the curve finding that the evidence does sustain there was a sharp bend in the center of the long sweeping area of the curve. However, the evidence does not sustain the plaintiff's contention that the curve was blind as to Morris. Baxter did testify that he couldn't see around the curve when he was attempting to pass the defendant's vehicle. Morris, however, repeatedly refused to characterize this curve as a blind curve and testified that when Baxter started to pass him, he could see that there were no lights from oncoming traffic for at least 1500 feet ahead of him. The plaintiff gave no testimony with regard to visibility around the curve or whether or not it was blind. There was no testimony regarding the various differences in heights above the highway of the driver's seat in Baxter's automobile as compared to that in the defendant's vehicle or any topographical explanation given to explain why one could see while the other could not. The only conclusion that can be reached from the transcript as to this issue is that Baxter could not see around the curve while Morris could. In the absence of any other evidence showing that the curve was blind as to Morris she was bound by his testimony, given as a part of her case, that it was not blind so far as he was concerned. He was driving the defendant's vehicle. Under these circumstances the plaintiff is not justified in having her case against the defendant considered in the light of a blind curve.

■ Actionable negligence consists of a duty upon the defendant to protect the plaintiff from injury, failure to discharge that duty, and injury proximately resulting from such failure, Mo. Digest, Negligence, ■ Was Morris under a duty to slow down? The plaintiff's theory is that he was as, under the circumstances that existed, he should have anticipated that Baxter might have some difficulty in making the curve but in spite of the difficulty would persist in his attempt to pass. Therefore, he argues, whether Morris should have slowed down when the vehicles were abreast of each other was for the jury.

When the Baxter automobile pulled out from behind defendant's vehicle into the passing lane, Morris had three courses of action available to him. First of all, he could slow his vehicle. In 60 C.J.S. Motor Vehicles § 325, p. 754, it is stated that "[a] driver who is proceeding at a reasonable rate of speed on the proper side of the road is not under a duty to reduce his speed so that a car approaching from the rear may pass him * * *." In Stakelback v. Neff, Mo.App., 13 S.W.2d 575, l. c. 577, an intersection case where the alleged error lay in the giving of the plaintiff's verdict-directing instruction, the court held that a duty to stop, decrease speed or change course does not arise until, in the exercise of the degree of care required of him, the driver would reasonably have been led to believe that if he did not so act a collision would occur. In Cowden v. Crippen, 101 Mont. 187, 53 P.2d 98, it was held that there was no merit in the suggestion there made that the defendant had to slow his vehicle while he was being passed. These authorities indicate that there was no duty upon the defendant's driver to reduce his speed. In fact, there are cases that go further and hold that if he had done so, he could have been charged with negligence. In Devine v. Barton, Mo.App., 22 S.W.2d 877, l. c. 879, this court indicated that a driver of the vehicle which is passing another and finds that the pass cannot be safely made, should stop or drop back behind the vehicle he was attempting to pass. In Thelen v. Spilman, 251 Minnesota 89, 86 N.W.2d 700, 77 A. L.R.2d 1315, it was held that the defendant could be found negligent because he slowed while the plaintiff was passing and thus made it more difficult for the plaintiff to return to his proper lane.

The second course of action available to the defendant's driver was to increase his speed. This state has a statute which prohibits an increase in speed while being passed, § 304.016, RSMo 1959, V.A.M.S., and there are cases which clearly indicate that even under the common law it may be negligence for a driver to speed up while being passed. For example, see Ironside v. Ironside, 188 Okl. 267, 108 P.2d 157, 134 A.L.R. 621, cited by the plaintiff.

■ The third, and to our mind the only safe course of action for Morris to follow under the facts of this case, was to maintain the same speed at which he had been traveling so that Baxter could make his own decision as to whether it was better to attempt to complete the pass or better to terminate his attempt to pass and dropping behind defendant's vehicle return to the right-hand lane. To rule that, prior to that time, Morris should have adopted one of the other courses of action available to him is to require him to engage upon speculation of the wildest kind. If Morris guessed that Baxter was going on to pass despite the danger and to facilitate such action he slows up when in fact Baxter had decided to drop back, his action may prevent Baxter from getting back into a position of safety and his wrong guess may constitute negligence resulting in death or injury to the occupants of Baxter's vehicle. If defendant's driver guessed that Baxter was going to drop back behind him and to facilitate such action he speeds up when in fact Baxter had decided to attempt to complete the pass, his action may prevent Baxter from completing the pass and getting back into a position of safety and his wrong guess may constitute negligence resulting in death or injury to the occupants of Baxter's vehicle. Adoption of the plaintiff's theory would not only require the defendant's driver to guess Baxter's course of action and act upon that guess, it also would penalize him if his guess would later prove incorrect. Actionable negligence should not be predicated upon a sort of Russion roulette played with motor vehicles. Morris was under no duty to change his speed as the vehicles traveled abreast of each other. Stakelback v. Neff, supra; 60 C.J.S. Motor Vehicles § 325 supra.

■ To rule in plaintiff's favor would also require Morris to speculate as to at least one other matter. For example, absent some other factor, it cannot be said that there was any danger of a collision occurring between Baxter and the defendant's vehicle as they traveled abreast of each other. Recognizing this and being cognizant that the evidence negates the existence of any oncoming traffic, plaintiff relies upon the curve, the only other factor available to her under the evidence. Yet, there is no evidence in this case indicating the curve is so inherently dangerous that its mere existence could reasonably lead Morris to assume that Baxter would not be able to negotiate it even traveling abreast of Morris. This court has held that a defendant cannot be held to be negligent for failing to anticipate a mere or remote possibility of danger to others arising from situations which he creates. Lane v. Supreme Cab Co., Mo.App., 374 S.W.2d 527. It follows this rule would be even more applicable in the instant case where Morris did not create the situation from which plaintiff contends the danger arose.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.