[Civ. No. 6540. Third Dist. Sept. 29, 1941.]

WILLIAM HODGES, Respondent, v. ELMER McCULLOM, Appellant.

42

Samuel F. Finley, J. H. Carnahan and J. Everett Barr for Appellant.

Tebbe & Correia and Thos. H. Chatburn for Respondent.

TUTTLE, J.—This action was brought to recover for personal injuries, medical expenses, and damages to the automobile of plaintiff. After trial by the court, findings were entered in favor of respondent, and judgment for $1276.40 entered against defendant, who now appeals therefrom.

There are, in reality, only two grounds urged for reversal, although they have been subdivided into six by appellant. The first is the insufficiency of the evidence to support the findings, and the second is that the damages are excessive. Taking up the first ground, it appears that the collision resulting in the injuries was the usual intersection case—a type of accident which is sometimes very difficult of solution. In detailing the facts, we must necessarily give plaintiff's version. We "must accept as true all evidence tending to establish the correctness of the finding or verdict, and . . . must consider it in the most favorable aspect toward the prevailing party, and give to him the benefit of every inference that can reasonably be drawn in support of his claim." (2 Cal. Jur., sec. 515, page 880.) On October 27, 1937, at 7:00 a. m., plaintiff was driving his automobile in a southeasterly direction on State Highway No. 39, near

Tulelake, Siskiyou County. It was daylight, and the weather was clear. He was approaching the intersection with the Old Merrill-Tulelake Road (Third Street), at about twenty to twenty-five miles an hour. Defendant was driving at about the same speed, approaching the intersection on Third Street, and traveling in a southwesterly direction, the roads meeting at a right angle. At the northeast of the intersection there is a "stop" sign facing north, and toward the oncoming traffic moving toward Tulelake and all cars entering the intersection with Highway 39. There is a one-story building on the same corner as the "stop" sign, a few feet from said sign. The fenced right-of-way for Highway No. 39 is one hundred feet in width. The building, of course, is off the right-of-way. The manner in which the collision occurred is thus testified to by plaintiff:

"A. Well, I seen his car coming. Of course, as I said awhile ago, back behind those buildings. Naturally, I figured he would stop. I was going on through Tulelake. I didn't make a stop there, and I figured he would stop naturally. The first thing I knew, when I come along by the cross-road there, you know, he come right on in front of me. He never stopped at the stop sign or nothing. He was perhaps 30 feet or closer when he come in front of me. Q. Who first entered the intersection of the road? A. Well, I think I did from where the cars hit. It showed that I had, anyway. I think I entered first. Q. That is, did you see where his car was with relation to the intersection when he entered the intersection? A. Well, he was coming right on the edge of the highway. Q. And where were you? A. I was just entering the intersection. He was nearly to the edge of the highway at that time. Q. At what rate of speed were you driving when you entered the intersection. A. Anywheres from 20 to 25 miles; not over 25."

In direct contradiction is the testimony of defendant:

"A. I got to the highway and stopped and glanced down the highway and Mr. Hodges was at the corner of the Case Machine Company's building and I started right up and crossed—started across the highway. And when I was about in the middle of the highway, I glanced again and Mr. Hodges was in—well, I would say approximately 50 feet of me, and I seen that no matter what I was going to do, I was going to be hit. And I gradually pulled to the left a little on just

a slight angle and stepped on the gas as hard as I could, and Mr. Hodges hit me.''

As a result of the collision, the evidence shows plaintiff's knee to have been ''all bruised up''; that he suffered three fractured ribs; that he was confined to the hospital for eight days; and that he suffered pain in his hand, side, and knee during his confinement in the hospital; that he found it difficult to breathe; that the pain about the chest and difficulty in breathing continued for six weeks; that pain was constant for six weeks; that after his release from the hospital he was confined to bed for more than two weeks; that he was unable to walk when released from the hospital; that he suffered pain in his knee and was unable to put any weight on it; that he has never recovered from the pain in his knee; that due to his knee injury he is unable to climb stairs, and that his knee buckles when climbing stairs; that he has to keep a hand on his knee when climbing stairs to brace the knee; that he still suffers pain in his knee more than two years after injury; that he suffers pain in his right hand; that his knuckle was injured; that prior to the accident the gripping power of his right hand was good but now has none in two fingers.

The highway on which plaintiff was traveling was a ''through highway'' (Vehicle Code, sec. 82.5). The duty of defendant, in entering such a highway, is laid down in section 552 of said code, which reads as follows:

''The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway.''

Whether or not defendant breached such duty was a question of fact to be determined by the trial court, and where there is a conflict in the evidence respecting such facts, we are bound by its findings. If the trial court believed the testimony of respondent, the latter approached the intersection at a lawful rate of speed. He had a right to

believe that defendant would obey the law and stop. In 2 Cal. Jur. Supp., sec. 227, pages 349, 350, it is said:

"Responsibility on the part of a driver is predicable of the fact that he did not arrest the movement of his vehicle at the entrance of an intersection at which a 'stop' sign had been erected, his opponent having driven into the intersection on the assumption that the former would bring his car or truck to a stop. The statute prescribes that the driver of a vehicle which, pursuant to legal requirements, has been stopped at an intersection of ways shall yield the right of way to the driver of a vehicle which is within or closely approaching the place of intersection. And, in a case of collision at an intersection, the force and effect of this requirement is that, although a vehicle may have approached the intersection from the right, yet responsibility may be chargeable to the driver because he failed to stop and yield the right of way to the vehicle approaching from the left, acting upon the assumption that the driver of a vehicle thus approaching would accord to him precedence crossing the intersection."

After examining the record, including the exhibits, we are satisfied that there is ample evidence to uphold a finding to the effect that defendant was guilty of negligence, and that the failure of defendant to observe the stop sign was an act of negligence which contributed proximately to the accident.

Appellant's contention is largely one of argument upon the facts. He testified that he stopped at the "stop" sign. Appellant insists that we ignore the testimony of respondent to the contrary, and concludes that there is "no evidence to support a finding that defendant failed to stop." Plaintiff testified that his speed did not exceed twenty-five miles an hour. Appellant insists that the damage to the automobile indicates that the speed was far in excess of that figure. Appellant also insists that a building obstructed the view of respondent so that he could not see whether or not appellant actually failed to stop at the "stop" sign. We might point out, however, that defendant testified he halted at the stop sign, and he then saw plaintiff's car "at the corner of Case Machinery Company's building, and I started right up and started across the highway." This would seem to be a

complete answer to the last contention. Both parties agree that one could see the other. Such matters obviously were exclusively for the trial court. Many discrepancies are pointed out in the testimony of respondent, particularly with reference to the speed at which he was moving and the distance from the intersection when he first saw appellant. Suffice it to say that we cannot agree with the contention of appellant that plaintiff's own testimony is so inherently improbable, and so impeached by the physical facts, that it should have been rejected *in toto* by the trial court.

Such discrepancies do not, as appellant would seem to urge, make it the positive duty of the trial court to entirely disregard the facts involved. It is the duty of the trial court to reconcile any conflicts, and to sift from the mass of divergent and conflicting facts, the ultimate truth, so far as that is humanly possible. If a witness testifies in direct examination that he was going at the rate of twenty miles per hour, and on cross examination he fixes that speed at thirty miles per hour, the court may find that either is true. This is rather an elemental statement of the law, but it is often overlooked, and the functions of a trial court or jury treated as our problem.

As to the matter of excessive damages, after reviewing the evidence, we cannot say that the recovery is ''so grossly disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice and raise at once a presumption that it is the result of passion, prejudice or corruption, rather than honest and sober judgment. . . . '' (8 Cal. Jur., sec. 88, page 834.)

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.