## FAUKS v. GARRETT.

No. 34191.   July 17, 1951.

Rehearing Denied Sept. 25, 1951.

*235 P. 2d 921.*

Keaton, Wells, Johnston & Lytle, Oklahoma City, for plaintiff in error.

Butler & Rinehart, Oklahoma City, for defendant in error.

O'NEAL, J.   This is an appeal from a judgment of the district court of Oklahoma county in an action by Frank A. Garrett for damages for personal injuries growing out of an automobile collision at the intersection of 23rd street and East avenue (Eastern) on February 19, 1947.   Plaintiff entered the intersection from the north and defendant entered from the southeast. Plaintiff, in his petition, alleges that he was driving his Ford automobile south on East avenue in Oklahoma City and had just crossed East 23rd street when his automobile was struck by an automobile being driven by defendant who had entered the intersection from Tower's Court, a street entering said intersection from the southeast.   Plaintiff alleges negligence on the part of the defendant in that defendant violated sections 55(2) of Ordinance No. 5791, of the City of Oklahoma City, which provides that the driver of a vehicle intending to turn left on an intersection shall do so as follows:

"The approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof, and after entering the roadway intersection the left turn shall be made so as to leave the roadway intersection to the right of the center line of the roadway being entered."

Also, that defendant violated Title 10, sec. 23(1) and (2) (c), which provide that vehicles approaching or entering intersections having no traffic control signals or flashlight signals in operation and no official stop, slow, or warning signs, shall be governed by the following rules:

"(2) (c) The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which has already entered the intersection or which is approaching so closely as to constitute an immediate hazard. . . ."

Also, that defendant violated section 99 of said Ordinance No. 5791, and also the laws of the state, in that he failed to keep to the right on East avenue on entering and traveling upon same, and in keeping to the right of the center of East avenue as he met plaintiff's vehicle, which section 99 provides:

"Section 99. Keeping to Right (2) All vehicles shall keep to the right driveway on all streets or highways which are divided into two driveways."

"(4) Vehicles in meeting each other shall keep to the right of the center of the street or highway."

Plaintiff further alleged that defendant was guilty of reckless driving under

Title 18, sec. 101, of said ordinance, in that defendant drove his said vehicle at said time and place in the manner which was calculated to endanger the rights, life or property of plaintiff, and without due caution or circumspection, in violation of the terms of said ordinance, which provides:

"Reckless Driving.

"Section 101. Defined. Any person who drives any vehicle or animal in a manner which is calculated to endanger the rights, lives or property of others, or which is without due caution or circumspection, or which is at a careless, heedless or dangerous rate of speed is guilty of reckless driving."

Plaintiff further alleges that by the negligent acts on the part of defendant, plaintiff was permanently injured and suffered general damages in that his left leg was fractured; his left kneecap was fractured so that it had to be removed; that plaintiff suffered and still suffers pain as a result of said injuries to his damage in the sum of $7,500 and $2,500 for pain and suffering; that in addition thereto plaintiff suffered special damages in the way of hospital expenses, medical and surgical expenses, anesthetic services, loss of earnings, and damages to plaintiff's automobile, in all $1,271. Prayer was for judgment for general damages in the sum of $10,-000 and special damages in the sum of $1,271. By amendment the amount of general damages claimed was increased to $30,000 and special damages were claimed in the sum of $391.

Defendant filed his answer to the petition as amended, and his cross-petition seeking damages from plaintiff.

In his answer defendant denied generally the allegations of plaintiff's petition, except such as were specifically admitted. He admitted the collision between the plaintiff's automobile and defendant's automobile at the time and place alleged in plaintiff's petition and admits the ordinances of the city of Oklahoma City as pleaded in plaintiff's petition.

The answer further alleges:

" . . . That on the date alleged in plaintiff's petition at the approximate hour of 12:00 o'clock noon, he was driving his automobile on Tower's Court, at the point where same intersected with Northeast Twenty-third Street and East Avenue in Oklahoma City; that after entering the said intersection of Tower's Court and Northeast Twenty-third Street and East Avenue he observed that plaintiff, driving his automobile in a southerly direction along East Avenue, failed to stop at the north curb line of Northeast Twenty-third Street before entering said intersection; that he immediately stopped his automobile but plaintiff failed to stop his said automobile but continued in the said intersection and drove his said automobile directly against the right front end of defendant's automobile; . . ."

By his cross-petition defendant reiterated and adopted all the allegations in the answer, and then alleged:

"That at the time herein mentioned he was driving his automobile with due care and was without fault in the premises and that the collision and his damages resulting therefrom were the direct and proximate result of, caused by and due to the negligence and want of care of the plaintiff as hereinabove set out and but for which same would not have occurred."

He then alleged certain damages, specifying the items, to defendant's automobile, in the total sum of $194, for which he prays judgment against plaintiff.

The issues were tried to a jury resulting in a verdict and judgment against defendant and in favor of plaintiff in the sum of $5,000. After unsuccessful motion for new trial, defendant appeals.

The principal contention is that the court erred in giving instruction No. 13. One of the questions in issue was whether plaintiff violated section 33 of Ordinance 5791 of the city of Oklahoma City, and whether, if plaintiff did violate said section 33, such violation con-

stituted negligence on the part of plaintiff.

Instruction No. 13, given by the court over the objection and exception of the defendant, was:

"However, as to the ordinance requiring stops to be made at the north side of 23rd Street on East Avenue, you are instructed that if from the evidence in this case you find that said ordinance was not being enforced and that it was being generally disregarded by the drivers of motor vehicles on said East Avenue, this should be considered in determining whether or not the plaintiff was guilty of a violation of said ordinance.

"Given and excepted to by the defendant and exceptions allowed. /s/ A. P. Van Meter, Judge."

The record shows that 23rd street north is a boulevard or through street running east and west from the west city limits to the east city limits. However, stops were required thereon at the east and west intersection of Classen Boulevard, east and west intersection of Western avenue and east and west intersection of May avenue.

The record shows that East avenue (Eastern) is a thoroughfare, or through street, from Fourth street north to the south line of 23rd street. From 23rd street north East avenue was not at that time a thoroughfare, or through street. Tower's Court is a street running from southeast to northwest which intersects 23rd street and East avenue at the same place where they intersect each other. On the date of the collision certain construction work was being carried on on Northeast 23rd street east from East avenue. A barricade had been placed on and across 23rd street at about the east curb line of East avenue which extended from the north curb line of 23rd street across 23rd street and on south to, and for some distance along, the north curb line of Tower's Court so that traffic was suspended on 23rd street east from the east line of East avenue, leaving traffic open on 23rd street west of the East line of East avenue and on East avenue north and south of 23rd street and through the intersection, and on Tower's Court running into said intersection.

The evidence shows that about 12:00 o'clock noon on February 19, 1947, defendant, W. K. Fauks, was driving his automobile along Tower's Court from the southeast approaching said intersection. He stopped at a filling station a short distance south and east of the intersection and purchased some gasoline. He then started to drive on northwest on Tower's Court to the 23rd street intersection and to turn west on 23rd street. He stopped at a stop sign on Tower's Court about 75 or 80 feet south of the middle line of 23rd street. He then drove on into the intersection of 23rd street and as he approached the center of the intersection he observed plaintiff's automobile coming south on East avenue about 100 yards north of the north line of 23rd street. Defendant testified that he knew 23rd street was a boulevard and understood that traffic going north and south on East avenue was required to stop before entering 23rd street. He testified that when he saw plaintiff's automobile coming south on East avenue he assumed that plaintiff would stop at the stop sign on the north line of 23rd street; that he then started going toward the northwest corner of the intersection of 23rd street and East avenue. He then observed that plaintiff's car had not stopped at the north line of 23rd street; the two cars came together some 20 feet south of the center line of 23rd street and some 10 or 15 feet west of the center line of East avenue.

Plaintiff testified, in substance, that on February 19, 1947, he was living at 1618 Northeast 34th street at the home of his mother; that shortly before noon on February 19, 1947, he started from his mother's place intending to go to his brother's home on Southeast 15th street. He testified that his brother, Bernice W. Garrett, was riding with him in his Ford automobile; that he

went east to Rhode Island street and 36th street and there turned east to East avenue, and then turned south on East avenue; that as he came to 23rd street he observed that there was some road work going on on 23rd street east of the intersection and that there was a barricade on and across 23rd street on the east side of East avenue; that the entire intersection itself was open; as he approached 23rd street he observed that there was no stop sign on the north line of said 23rd street. He testified that he did not know who had removed the stop sign. He testified:

"Q. All right. Now, when you came up there, was there any stop signs located at that intersection? A. No, sir.

"Q. Do you know of your own knowledge whether or not they had been removed or what? A. All I know is they wasn't there. I had drove up that way every day and they had been removed.

"Q. They had taken them up when they started this construction, so far as you know; is that right? A. That is right."

He testified further that as he came to the intersection he slowed down to about five miles per hour; that there were no cars coming on 23rd street and no cars coming to meet him on East avenue, and that he did not see any cars coming off the diagonal street, Tower's Court; that he shifted gears and went·on across 23rd street without stopping and at the rate of 15 or 20 miles per hour; that he did not see defendant's automobile until the two cars came together; on cross-examination plaintiff testified that he had been traveling along that street many times; that he was very familiar with the street and knew that 23rd street was a boulevard, and knew that there had been a stop sign both north and south of 23rd street on East avenue; that he knew under the ordinances and regulations he was supposed to stop at the stop sign, but because he did not see a stop on that particular day he did not stop.

At the trial it was established that all the ordinances above set forth, including sections 33 and 340, Ordinance No. 5791, were in full force and effect on the 19th day of February, 1947. The uncontradicted evidence and stipulation of the parties shows that the ordinances of the city required drivers to stop at the stop line on East avenue on the north side of 23rd street, and that said ordinance was in full force and effect; that failure to stop at said stop line was a violation of the ordinance and that plaintiff was well acquainted with the crossing, and that he knew 23rd street was a boulevard. He admitted that he did not stop at the stop line on the north side of 23rd street. There can be no doubt that plaintiff violated the ordinance in question. The question then might arise whether such violation was negligence and whether such negligence contributed to plaintiff's injuries. The latter question would be one for the jury.

Notwithstanding this, the trial court in instruction No. 13 instructed the jury that if from the evidence in the case the jury should find that said ordinance was not being enforced, and that it was being generally disregarded by the drivers of motor vehicles on East avenue, this should be considered in determining whether or not the plaintiff was guilty of violating said ordinances.

It is first contended by defendant that general disregard of an ordinance by others does not excuse additional violations thereof. In view of the next contention of defendant we pass that question.

The next contention is that there was no pleading and no evidence of general disregard, or lack of enforcing of the ordinance, and, therefore, nothing to support or justify instruction No. 13.

Examination of the entire record will disclose no evidence whatever to indicate that the ordinance in question was being generally disregarded, or was not being enforced. There was no evidence that the driver of any vehicle

south along East avenue north of 23rd street, other than plaintiff, failed to stop at the stop line on the north line of 23rd street. There was no allegation in the pleading that such fact existed. In Maurmair v. National Bank of Commerce of Tulsa, 63 Okla. 283, 165 P. 413, it was held:

"It is error for the trial court to instruct the jury upon an irrelevant issue, not raised by the pleadings or of which there is no evidence, when the instruction is calculated to mislead the jury."

In Dickson v. Joy, 188 Okla. 597, 112 P. 2d 355, it was held:

"It is reversible error to give an instruction which has no application to the issues involved or the evidence in support thereof, where it is apparent that the rights of the losing party were thereby prejudiced."

Under the record, instruction No. 13 was clearly prejudicial to the rights of defendant. It had the tendency or effect of depriving defendant of the right to apply the rule that the driver of the vehicle has the right to assume that other drivers will respect and obey the law with reference to stop signs and stop lines.

In Guegel v. Bailey, 199 Okla. 441, 186 P. 2d 827, it was held:

"Where one of two intersecting highways is a boulevard protected from traffic on the other by stop signs, the rule that first automobile to enter intersection has right of way does not ordinarily apply, and motorist on boulevard has right to assume that driver on intersecting highway will obey stop sign and yield right of way."

In Ambra v. Woolsey, 55 Cal. App. 2d 104, 130 P. 2d 152, it was held:

"Appellant cites many cases having to do with collisions in intersections which are not guarded by stop signs, and applying the familiar rule that the first automobile to enter the intersection has the right of way. Such cases have no application to a collision in an intersection where one of the two highways is a boulevard protected from traffic on the other by stop signs. In such a situation the driver on the boulevard has a right to assume that the driver on the intersecting highway will obey the stop sign and yield him the right of way."

See, also, Carpenter v. Snipes, 203 Okla. 534, 223 P. 2d 761.

In Schmit, Respondent, v. Dallas Jansen, Guardian, Appellant, 247 Wis. 648, 20 N.W. 2d 542, 162 A.L.R. 925, it was held:

"A motorist on an arterial highway, vehicular traffic entering which from intersecting highways is supposed to stop, has the right to assume that this will be done, even where the stop sign has, without the knowledge of the motorist on the arterial highway, been accidentally turned so as to fail to conform with the requirement of law."

It was also contended that the trial court erred in overruling defendant's motion for new trial based upon alleged newly discovered evidence. Since the cause must be reversed for the errors above pointed out, it becomes unnecessary to consider the claim of error in overruling the motion for new trial based upon alleged newly discovered evidence.

Reversed and remanded, with directions to grant defendant a new trial.

LUTTRELL, V.C.J., and GIBSON, HALLEY, and JOHNSON, JJ., concur. WELCH, CORN, and DAVISON, JJ., dissent.