**HANSEN v. CUNNINGHAM et al.**

No. 35396.

Supreme Court of Oklahoma.

June 30, 1953.

Harlan S. Trower, Jack J. Ferguson, and Jack I. Gaither, Tulsa, for plaintiff in error.

Coffey & Coffey, Tulsa, for defendant in error.

BLACKBIRD, Justice.

This is an appeal from a judgment sustaining defendants' demurrer to plaintiff's evidence in an action by plaintiff to recover damages to his automobile, and for loss of use thereof, alleged to have resulted from a·collision proximately caused by defendants' negligence.

The petition charged plaintiff's vehicle, operated by one Hostick, was struck at the intersection of Sixth Street and Troost Avenue in the City of Tulsa by an automobile owned by defendant, C. M. Cunningham and operated by his agent, the defendant, Mrs. Dorothy L. Cunningham; that plaintiff's car was being driven east on Sixth Street, which is a through street, protected from north and south bound traffic on Troost Avenue by stop signs (where the latter street intersects it); that Mrs. Cunningham negligently refused to yield the right of way and drove into said intersection, thereby causing the collision and resultant damage, for which plaintiff sought a total recovery of $315.80. Mrs. Cunningham was charged with negligence in failing: (1) to yield right of way to plaintiff's vehicle traveling upon a through street; (2) keep a proper lookout; (3) to drive in such manner as to be able to stop in the assured, clear distance ahead; (4) to keep her car under proper control and be able to avoid striking plaintiff's car; (5) to ob-

serve applicable city ordinances relating to stopping at through streets and yielding the right of way, and those defining the circumstances under which an operator is guilty of reckless driving.

Defendants answered by general denial and cross-petition, but since no question with reference to the latter is involved in this appeal, it need not be considered.

Plaintiff's evidence established that Hostick was his brother-in-law and that each used the car at his own convenience. His testimony, and that of the party who repaired the car, established the nature and extent of damage to the vehicle and the necessity and reasonableness of the repairs made thereto.

The substance of Hostick's testimony concerning the way in which the accident occurred was that he was driving east on Sixth Street, which is protected at intersections from cross traffic by stop signs. He was following along in the regular line of traffic, traveling no more than 25 miles per hour, and when about 40 feet from the intersection involved he observed defendants' car "heading out" into the intersection, and he thereupon applied his brakes and swung his car hard to the right. Due to wetness of the pavement, his car skidded, and when defendants' car was at the center of the intersection, the left front of his car struck it on its right front fender. His car did not move after the impact, but defendants' car skidded into another vehicle parked at the southeast corner of the intersection. Hostick further testified there was a building on the northwest corner of this intersection, standing about 12 feet back from the curb, and there was shrubbery about 5 feet high which protruded out between this building and the sidewalk. There was a car parked along the north curb line in front of this building.

Hostick further testified that he was south of the center line, in the proper traffic lane of Sixth Street, and defendants' car was at or beyond the center line, when the collision occurred. He did not see defendants' car come into the intersection and did not know he was required to be on the lookout for traffic coming into Sixth Street, since he thought all traffic moving into a

through street was required to wait for traffic on it to clear. Also, he could not have seen a car back of the stop sign (on Troost Avenue) be~ause the aforementioned parked vehicle had the effect of obstructing his view of any car at the stop sign, and rendering it impossible to see any such car under the circumstances, until it came out into the intersection beyond the said parked car.

Mrs. Cunningham testified she was driving south on Troost Avenue, and that on the corners of the intersection, there were buildings obstructing the view, so that it was necessary to pull out beyond the stop sign in order to have a clear view in both directions. After stopping, she drove up a little farther, about 3 feet past the curb line, to get a clear view, and looked in both directions before driving out into the intersection in low gear, and her car was approximately three fourths of the way across Sixth Street when struck by plaintiff's car, the impact pushing her into a parked truck. She said she did not see plaintiff's car when she looked for traffic approaching the intersection on Sixth, nor did she see him until she was struck. After pulling out past the stop sign, it is possible to see some four blocks back west along Sixth Street.

At the close of all the evidence, defendants demurred to plaintiff's evidence and moved the court for a directed verdict, on the ground of insufficiency of the evidence. Said demurrer was overruled, as was plaintiff's motion for a directed verdict. After a short recess, and upon further hearing of this matter the trial court stated:

"Gentlemen of the jury, I have given this consideration since we were in session, and on reading some of the evidence, and on consideration of some of the law, * * * the demurrer of the defendant(s) to the plaintiff's evidence is sustained, and the plaintiff is allowed an exception; * * *".

The court thereafter entered judgment in accord with his quoted declaration.

To reverse this judgment, plaintiff urges application of the rule that defendants' demurrer admitted every fact which the evidence in the slightest degree tended to prove, and all logical inferences to be drawn therefrom; that any conflict in the evidence unfavorable to him must be considered as withdrawn for the purpose of a decision on the demurrer. His position is that taking all the evidence favorable to him, and the reasonable and logical inferences to be drawn therefrom, there was ample evidence from which the jury could have found Mrs. Cunningham was negligent in failing to stop and yield the right of way, and in driving directly into the path of his oncoming vehicle; and that, inasmuch as said defendant testified she did not see plaintiff's car, there was at least a question, under the facts, as to whether she was negligent in failing to keep a proper lookout.

In plaintiff's petition he cited, and, at the trial, introduced in evidence, Sec. 139(c) of Title 28 of the Tulsa City Ordinances, which reads as follows:

"(c) Vehicle Entering Through Streer or Stop Intersection.

"The driver of a vehicle shall stop as required by this Ordinance at the entrance to a through street or at any intersection where a stop sign is erected at the entrance thereto and shall yield the right of way to all vehicles which are within the intersection or are approaching upon his left or right so closely as to constitute *an immediate hazard* and shall not proceed into said intersection until he can do so without interfering with the movement of other vehicles." (Emphasis ours.)

This ordinance, as counsel says, is similar to Section 121.6(c) Title 47 O.S.1951. Their argument is that in sustaining defendants' demurrer, the trial court held, in effect, that a vehicle approaching a through street intersection at a distance of 40 feet (as was testified to) is not close enough to constitute "an immediate hazard" within the meaning of the above ordinance and statute; and that a driver may properly proceed from a stop sign into such an intersection without regard to the movement of other vehicles on the through street, contrary to the quoted ordinance. They maintain that these matters were questions of fact for the jury, citing Zwerin v. River-

side Cement Co., 52 Cal.App.2d 715, 126 P.2d 920; Hodges v. McCullom, 47 Cal.App. 2d 41, 117 P.2d 44; Pattisson v. Cavanagh, 18 Cal.App.2d 123, 63 P.2d 868, 64 P.2d 945; Galway v. Guggolz, 117 Cal.App. 639, 4 P.2d 290.

Wilkinson v. Marcellus, 51 Cal.App.2d 630, 125 P.2d 584, 586, was a case in which the evidence revealed that plaintiff's motor cycle was 125 feet east of the intersection and traveling at the rate of 45 miles per hour when defendants' vehicle entered the intersection from a stop sign. In applying a statute with provisions very similar to the Oklahoma Statute and Tulsa Ordinance above cited, the court, in holding that the evidence was sufficient to support a verdict for the plaintiff, said:

"It is to be noted that the legislature has not set a hard and fast rule for the conduct of drivers approaching through highways but has provided the general rule that such drivers must yield the right of way to others travelling on the highway who are approaching so closely as to constitute 'an immediate hazard.' Our complex traffic problems are such that the circumstances of the traffic on a through highway as a driver approaches must govern his conduct in determining whether it is an immediate hazard. Whether a driver acts with due care or negligently in proceeding across a through highway must as a general rule be left to the determination of the jury in view of all the circumstances."

In Galway v. Guggolz, supra, the court in discussing one of the lower court's instructions, said with reference to the same provision of the California Vehicle Act [117 Cal.App. 639, 4 P.2d 291]:

"There is nothing in this section which will justify the court in prescribing in an instruction to the jury the number of feet upon which the driver may rely [as constituting 'immediate hazard']. That would be a question for the jury under all the facts and circumstances of the particular case."

In McSweeney v. East Bay Transit Co., 60 Cal.App.2d 807, 141 P.2d 787, that court said at page 789:

"Taking up first a consideration of the movements of the bus, as noted above, the defendants conceded there was substantial evidence produced by the plaintiffs that the bus did not stop at the south line of the intersection. * * * As it reached said line and should have stopped the Ford was approximately 75 feet from the westerly line of the intersection and advancing at a speed of from 25 to 30 miles per hour. Such evidence presented an issue of fact which the jury was at liberty to solve holding that the Ford was an immediate hazard.' "

It is further argued that the testimony of the defendant that she did not see plaintiff's automobile before it struck her car is at least sufficient to raise a question of fact for the jury as to whether, under the circumstances, she would or should have seen it had she been keeping a proper lookout, and was negligent in not doing so, as alleged in plaintiff's petition.

In urging that the evidence in this case presented a fact question as to whether or not his vehicle was approaching the intersection so closely as to constitute "an immediate hazard" within the meaning of the applicable ordinance, at the time defendants' vehicle entered the intersection, plaintiff represents that a vehicle traveling 20 miles per hour covers 40 feet in less than 1½ seconds and that it goes 44 feet before it can be braked to a stop. Whether these mathematical calculations are exactly accurate or not, we think that under the above judicial declarations and our own precedents, the fact situation here is one to which the above-quoted ordinance is applicable and that the questions of whether Mrs. Cunningham violated it and whether such violation, which would ordinarily be negligence per se, was the proximate cause of the accident, were questions that should have been submitted to the jury under proper instructions. As to the general principles involved see Fauks v. Garrett, 205 Okl. 129, 235 P.2d 921; Guegel v. Bailey,

199 Okl. 441, 186 P.2d 827; Ironside v. Ironside, 188 Okl. 267, 108 P.2d 157, 134 A.L.R. 621; Fay v. Brewer, 181 Okl. 554, 75 P.2d 425; Smith v. Welch, 10 Cir., 189 F.2d 832. The least that can be said for the evidence is that it was such that reasonable men might fairly differ as to these issues and, under the rule this court has always recognized, this is sufficient to place them beyond the Court's complete or exclusive power of determination. Warden v. Richardson, 203 Okl. 474, 223 P.2d 338; Carter v. Pinkerton, 194 Okl. 34, 146 P.2d 842.

As we have determined that the trial court's refusal to do this was fatal error, it is unnecessary to consider plaintiff's other assignments of error. Accordingly, the judgment of the trial court is reversed with directions to said court to vacate it, and to supersede its previous order overruling, with an order sustaining, plaintiff's motion for a new trial.