Otto GESSEL, Administrator of the Estate of Mary Alice Gessel, Deceased, Probate No. 47661, In the County Court of Oklahoma County, State of Oklahoma, Plaintiff in Error,

v.

Elizabeth SMITH, d/b/a G & H Truck Lines, Defendant in Error.

No. 41442.

Supreme Court of Oklahoma.

Dec. 19, 1967.

Calvin W. Hendrickson, Oklahoma City, of counsel, Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for plaintiff in error.

Houston, Klein & Davidson, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Plaintiff in error and defendant in error will hereinafter be referred to as "defendant" and "plaintiff", as they appeared in the trial court.

Defendant's decedent was killed in a collision between the Plymouth sedan she was driving, and an empty cattle truck owned by plaintiff and driven by her employee, Smith, near the juncture of State Highway No. 33 and U. S. Highway No. 69, on a clear, dry day in November, 1962. Both vehicles were substantially damaged.

In the vicinity of the collision, the U. S. Highway, a so-called "through" road, traverses the countryside in a generally north-south direction, and the State Highway approaches it from the west. Just as the latter road declines from higher ground to merge with U. S. No. 69, however, it curves to the northeast, so that it joins No. 69 at an acute angle. The "blending" of traffic from the State Highway into the "through" north-and-south-traffic on the U. S. Highway is theoretically made safer by an upright stop sign standing on the State Highway's southerly shoulder, at some distance southwesterly from where said State Highway joins the western edge of the U. S. Highway.

The collision occurred after the Plymouth entered U. S. Highway No. 69 from State Highway No. 33, without stopping beforehand, and when, before completing its turn north onto the U. S. Highway's east traffic lane, it encountered plaintiff's truck, as the latter was traveling south on said U. S. Highway's west traffic lane.

When plaintiff thereafter had instituted the present action against defendant for damages to the truck, on the theory that the proximate cause of the collision was the defendant's decedent's negligent operation of the Plymouth, including her driving it from the west on the State Highway, onto the U. S. Highway, without stopping at the above mentioned stop sign, or yielding the right of way to plaintiff's truck, defendant filed an answer and cross petition for damages on account of decedent's wrongful death and the destruction of her Plymouth, alleging that the collision was caused by the negligence of plaintiff's truck driver, Smith.

At the trial, Smith, the truck driver, testified, among other things, that his truck was "around 300 feet" north of the intersection of the two highways, when he first saw decedent's Plymouth approaching the U. S. Highway from the west, traveling at a speed he estimated to be "around 40 miles an hour" on the State Highway, and he realized "she wasn't going to stop" at the stop sign on the State Highway, and he first applied his brakes. Mr. Willis, the State Highway Patrolman, who made an investigation at the scene of the collision soon after it occurred, testified that this stop sign is "60 to 65 feet" southwest of where the two highways join, however, and that vehicles coming onto U. S. Highway 69 from State 33 usually "pull up * * * some 50 to 60 feet" past (or northeast of) the sign before stopping, preliminary to coming onto said U. S. Highway. Smith testified that at the time he first saw the Plymouth, his truck was traveling south at a speed "some place between 40 and 50 mile an hour" down grade; that "Just as I seen she was going to hit me, why, I cut to the left" and " * * * when she hit me, I was just to the right of the center lane" of the U. S. Highway. Smith further testified that the Plymouth struck the truck's right front wheel with its "left front", and this was substantiated by pictures of the two vehicles introduced in evidence, and by the testimony of the State Highway Patrolman.

The picture of the Plymouth reveals that the whole front end of it was demolished and the evidence showed that its motor was knocked out by the impact, and that it landed on the Highway No. 69 right of way, seventy three feet south, or southeast, of where its chassis and body was, after the collision. The Highway Patrolman testified that the Plymouth's body and chassis came to rest 59 feet south of the point of impact. He further testified " * * * it would appear, maybe, the impact started just a little to the left of the center of the car" (the Plymouth). His testimony continues, as follows:

"Q All right, now did you establish a point of impact between these two vehicles at the scene of the accident?

"A Yes, I did.

"Q How do you establish the point Officer Willis?

"A On an impact, you will have debris, certain scrapes, scratches or dug in places on the road way and * * * and they are usually at the end of a skid mark or something of that nature.

"Q How did you do it in this case?

"A There was skid marks and dug in places on the roadway.

"Q All right. What was the point of impact in relation to the center of this Highway #69?

"A The dug in marks were 7 feet east, 7 feet east of the center line.

"Q Of Highway #69?

"A Of 69, yes."

Willis further testified that the right front fender, bumper, and wheel were the parts of the truck that were damaged, and that the skid mark that the truck's right front wheel made as it "went down in a curving motion was 89 feet" long. As to whether the truck's skid marks came "right up to the point of impact", this witness testified: "I don't remember. Evidently they did, or I wouldn't have had 89 feet of marks." The Highway Patrolman further testified that the Plymouth left no skid marks, and that he was unable to determine whether, or not, any part of it was west of U. S. Highway 69's center line at the time of the impact. He did testify, however, that such Plymouths "are about 17 feet" long, and that the slab, or traveled portion, of the U. S. Highway in that area is 24 feet wide (each of its two traffic lanes being 12 feet wide) and that it has an 8-foot-wide improved shoulder along its west edge. The Patrolman further testified that he ascertained, by measuring, that it was 150 feet from the stop sign on State Highway No. 33 to where he judged the point of impact was on U. S. Highway No. 69, but that he didn't make measurements from that point to "other reference points * * *."

By cross-examining Smith and Willis, the attorney for the defendant, established that Smith never attempted to turn his truck to the right, or west, onto U. S. Highway 69's shoulder to avoid colliding with the decedent's Plymouth; and, at the close of plaintiff's evidence, he interposed a demurrer to same on behalf of the defendant, and moved for a directed verdict in defendant's favor. After these challenges to the sufficiency of plaintiff's evidence were overruled, the defendant put the defendant estate administrator on the witness stand to prove his appointment, the decedent's funeral expenses, etc., before resting his case and challenging the sufficiency of the evidence as a whole by interposing a demurrer and moving for a directed verdict on the principal ground that the "uncontradicted evidence" showed that "the plaintiff truck driver had the last clear chance to avoid this accident and that his negligence superseded any negligence of the defendant * * *".

After the trial court overruled both the demurrer and the motion, he sustained a demurrer on behalf of plaintiff to the evidence as it pertained to defendant's cross petition, and directed a verdict in favor of plaintiff. From the court's oral remarks at the time of these rulings, it is obvious that he not only considered the last clear chance doctrine unavailable to the defendant in this case, but was also of the opinion, (from the diagrams the witnesses used in reconstructing the collision and demonstrating the positions of the two vehicles just prior to, and at the time of, the collision, etc., and the evidence as a whole) that there could be no doubt that a collision between the two vehicles would have occurred, even if the truck had veered over on Highway 69's west shoulder in an attempt to avoid one.

After entry of judgment in favor of the plaintiff, in accord with the directed verdict, and containing the specific finding (among others) that the decedent's negligence "was the proximate cause of the accident", defendant filed a motion for a new

trial. After this was overruled, he perfected the present appeal.

In the sole proposition defendant urges for reversal of the trial court's judgment, he complains of error in the sustaining of plaintiff's demurrer and motion for directed verdict. In support of this proposition, he attempts to demonstrate, by the use of the figures supplied by the Highway Patrolman, that the trial judge was incorrect in his appraisal of the evidence, and that (contrary to the opinion the judge expressed from the bench) plaintiff's truck could have avoided the collision, if it had turned to the right, or west, onto U. S. Highway 69's 8-foot shoulder, rather than veering to the left and center of said Highway. This argument is based upon some premises, or assumptions of fact, however, that are not borne out by the record. For instance, defendant's brief states: "The defendant was on her side of the road at the point of impact by seven feet *with no portion of her car to the left of center. She was* for all practical purposes *straightened completely out* from her turn. * * *" (Emphasis added.) Assuming that the front ends of the two vehicles came together seven feet east of the center line of U. S. Highway 69, the only evidence in the record as to the length of the Plymouth shows that it was seventeen feet long. At the angle that the evidence indicated it came onto that Highway from State Highway No. 33, it is clear that practically all, if not all, of the Plymouth's remaining ten feet of length must have been in the truck's southbound, or west, traffic lane at the time of the collision, and that—instead of being "straightened completely out from" its turn, and in its proper, northbound, or east lane—the Plymouth was still in the process of making its turn off of the State Highway, and onto the U. S. Highway. Furthermore, the damaged condition of the Plymouth's whole front end, and the distance to which it rebounded from the impact with the truck's right corner, indicates that its front end met that corner almost head-on, and at a substantially high rate of speed, tending to corroborate the truck driver's testimony generally, including his statement to the effect that he had braked the truck almost to a stop, when the Plymouth hit it, and that, as far as he could ascertain, the latter never did slacken its speed.

Tit. 47 O.S.1961, § 1–126(a) defines "intersection" as follows:

"The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, *or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.*" (Emphasis added).

It cannot be denied that, at the time of the collision, at least part of the decedent's Plymouth was in "the area within which vehicles traveling upon" U. S. Highway No. 69 and State Highway No. 33 " * * * may come in conflict." It is conceded that her violation of Tit. 47 O.S.1961, § 11–403 (b) by entering the subject intersection, when plaintiff's truck was approaching it so closely as to constitute an immediate hazard, was negligence per se (in this connection, see Hansen v. Cunningham, Okl., 258 P.2d 906, 909). Nor is it denied that, even if she had stopped her Plymouth before entering said intersection, the duty of yielding the right of way to plaintiff's truck would have remained with her.

Courts in at least one other State where "intersection" is defined as above, have held that where a vehicle on a "through", or "favored", Highway, and one from an "unfavored" highway, both enter an intersection such as is involved here, the duty of the driver of the one from the unfavored highway to yield the right of way to the driver on the favored highway "persists throughout his passage across the favored way." See Shedlock v. Marshall, 186 Md. 218, 46 A.2d 349, 355, 356, following, and quoting with approval, Greenfield v. Hook, 177 Md. 116, 8 A.2d 888, 892, 136 A.L.R.

1485. We think this feature of this so-called "boulevard rule" is a good one, and that it is not only consistent with the previous decisions of this court (see Ruth v. Reeves, Okl., 340 P.2d 452, 454, citing Fauks v. Garrett, 205 Okl. 129, 235 P.2d 921) but it comports with the obvious purposes of legislation like §§ 1–126, 11–403(b), supra, and Tit. 47, § 11–703. After reviewing Maryland's decisions involving its statute comparable to these sections, the Court in Madge v. Fabrizio, 179 Md. 517, 20 A. 2d 172, 174, said:

" * * * from those decisions, it may be definitely stated that for a driver to enter such a boulevard without stopping or, having once stopped, to enter upon the favored highway before yielding the right-of-way to vehicles thereon is an act of negligence on his part, because there is no requirement that the motorist upon the boulevard should slow down at intersections, for the reason that the purpose of the statute is to permit such vehicles to move freely, thus accelerating the flow of traffic over such favored highway; and it may also be said that the driver of a motor vehicle upon the boulevard has a right to assume that those entering thereon will respect the prohibition of the statute.

\* \* \* \* \* \*

"In view therefore of the mandatory provision of the statute, it would follow that if one drives upon a boulevard and collides with a vehicle lawfully thereon, he himself is negligent, and under such circumstances courts will not be diligent in submitting his case to the consideration of a jury simply because he unsuccessfully attempted to dodge the boulevard vehicle, for plainly to send such a case to the jury, renders the statute meaningless and the result is nothing more than statutory repeal by the judiciary."

Notice also the discussion of statutes in Shedlock v. Marshall, supra.

Applying the rule to this case, and with emphasis on the position of the decedent's Plymouth at the time of the collision, it is quite clear that she was then engaged in a breach of her duty to yield the right of way to plaintiff's truck on the "favored" U. S. Highway and, consequently, was engaged in an act of negligence at the time defendant claims the truck driver had the last clear chance to avoid said collision. The doctrine of last clear chance was thus unavailable to her in this jurisdiction, and under the circumstances of this case, since, at the time of the collision, her own negligence was continuing, or had not ceased. See Jester v. St. Louis-San Francisco Ry. Co., Okl., 413 P.2d 539, Ziegelasch v. Durr, 183 Kan. 233, 326 P.2d 295, and other cases referred to in the annotation at 3 A.L.R.3d 180, 473 ff., and the footnotes to 8 Am.Jur. 2d, "Automobiles and Highway Traffic", § 753.

While conceivably there would be cases in which application of the boulevard rule and the last clear chance rule, as herein applied, would work an injustice (in this connection, see the comments in Harper v. Higgs, 225 Md. 24, 169 A.2d 661, 664, and Seamon v. Bolton, Ky., 351 S.W.2d 51, 52), there is insufficient basis in the record of this case for us to contradict the trial court's judgment and the specific findings therein contained, including the one that "the deceased's negligence and the plaintiff's lack of negligence is such that reasonable men cannot differ." That court had the benefit of all the witness's gestures and demonstrations in connection with diagrams that this record does not adequately reflect. The record does not reflect the relative positions of the two vehicles at the time the decedent's Plymouth entered the subject intersection; and, because of the peculiar situation of this intersection, and its near "Y" shape, it cannot be treated, in all respects, like one formed by roads crossing at right angles. (In this connection, see Shedlock, supra, 46 A.2d 329, 354). Nor are we impressed by defense counsel's emphasis on the distance plaintiff's truck driver testified his truck was traveling north of the intersection at the time he realized the defendant was not

going to stop her Plymouth at the stop sign, since, from his testimony concerning his familiarity with that intersection, he presumably knew what the highway patrolman testified to, i. e., that vehicles approaching the intersection on State Highway #33 usually continue "some 50 to 60 feet" past, or northeast, of the stop sign before stopping, preliminary to entering said intersection. Judging decedent's anticipated conduct by the usual, it would not have been unreasonable for the truck driver to rely upon her duty to yield his truck the right of way, even after he perceived that she was not stopping her car even with, or close to, the stop sign.

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

IRWIN, V. C. J., and DAVISON, BERRY, HODGES and McINERNEY, JJ., concur.

JACKSON, C. J., and LAVENDER, J., concur in part and dissent in part.

. WILLIAMS, J., dissents.