WALTER CURTIS, *Respondent*, v. MARY AGNES PERRY, *Appellant*.[1]

[1]Reported in 18 P. (2d) 840.

*Sather & Livesey* and *George Downer,* for appellant.
*Abrams, Healy & McCush,* for respondent.

BEALS, C. J.—Plaintiff seeks to recover damages on account of personal injuries sustained by him in a collision between a motorcycle driven by himself and a Dodge coupe owned and driven by defendant. A verdict was returned in favor of plaintiff, upon which judgment was entered. Defendant appeals.

The collision occurred in the right angle intersection of the Bellingham-Sumas highway with the Clearbrook highway. The former road is paved to a width of sixteen feet, and the latter is graveled to a width of ten or twelve feet. The Bellingham highway is practically straight for a mile to the south of the Clearbrook road, and is also straight for a considerable distance to the north.

Respondent lived near Abbotsford, British Columbia, a short distance north of Sumas. On the evening of July 2, 1930, he and George Andrews drove to Bellingham. On their return, at about nine o'clock, as they, proceeding north, made the turn a mile south of the Clearbrook road, they observed ahead of them the automobile of appellant, in which were riding three persons besides herself, going in the same direction. They testified that appellant's car was one-third to one-half mile ahead of them, and that it was traveling twenty-five to thirty miles per hour. Their speed was between thirty-five and forty miles per hour.

From testimony introduced in behalf of respondent, the jury may have believed that, at a point about five hundred feet south of the Clearbrook road, respondent had come up to within one hundred fifty feet of appellant's car, and then began to sound his horn as a signal that he was going to pass, continuing the signal until the moment of collision. As respondent approached closer to appellant's car, she swung over to the right of the paved portion of the highway and respondent swung over to the left side of the highway to pass, and, before the front of the motorcycle came abreast of the rear of the automobile, appellant, without holding out her arm or giving any signal of her intention to do so, turned abruptly to the left into the Clearbrook road.

Respondent, seeing that he would be unable to pass on the left, changed his course in an attempt to pass on the right. This attempt failed, and the motorcycle struck the rear of the automobile just to the left of center. At the moment of impact, the automobile was about half turned into the Clearbrook road, with the left wheel, and possibly the right, off the pavement to the west. It was dusk, and the light on the motorcycle shone on the back of appellant's car. Appellant did not look back before making the turn into the Clearbrook road.

Evidence on behalf of appellant was to the effect that, about five hundred feet south of the Clearbrook intersection, she observed, in the mirror of her car, the lights of an automobile a long distance behind her. She did not observe the motorcycle, nor was she aware of its approach. About four hundred feet south of the intersection, she began to apply her brakes, which operated a "stop light" signal, to slow down for the turn, and continued to apply them intermittently until she reached the intersection. A ditch paralleled the Clear-

brook road on the south, over which was a bridge with side railings. Because of this bridge in the Bellingham-Sumas highway and the narrowness of the Clearbrook road, it was necessary to take the turn very slowly. There was no warning signal from the motorcycle indicating an intention to pass. The only sound of horn was a slight "squawk" at the moment of impact. Appellant's evidence further tended to show that the motorcycle was traveling at a speed much in excess of forty miles per hour.

Appellant relies upon eighteen assignments of error, which may be grouped under three heads: (1) Refusal to instruct the jury to return a verdict for defendant and overruling a motion for judgment notwithstanding the verdict; (2) misconduct of counsel in the cross-examination of appellant and witness Ebright; and (3) refusal to give certain instructions requested by appellant, and the giving of certain instructions.

Appellant's requested instruction for a directed verdict was properly refused, and likewise, her motion for judgment notwithstanding the verdict. Under the evidence, as above narrated, her negligence and respondent's contributory negligence were for the jury. *Burns v. Standring*, 148 Wash. 291, 268 Pac. 866; *Jacklin v. North Coast Transportation Co.*, 165 Wash. 236, 5 P. (2d) 325; *Grubbs v. Grayson*, 165 Wash. 548, 5 P. (2d) 1033.

Appellant called as a witness Floyd Ebright, the mechanic who repaired her car. He gave a detailed description of the damage sustained by the car as a result of the collision. On cross-examination, under the pretext of testing his credibility, he was asked who brought the car in for repair and who paid the bill. The following questions were asked appellant on cross-examination:

"Q. (Mr. Abrams) You filed no claim or interposed no claim in this suit for the damages to your automobile, did you? Mr. Sather: Same objection. It isn't material and isn't cross-examination. The Court: It will be overruled. Exception. A. I did not. Q. (Mr. Abrams) And you haven't presented any at all? A. I have not. . . Q. Miss Perry, do you know how much the repair bill was to your automobile? Mr. Sather: To which we object. It is not in issue here; incompetent, irrelevant and immaterial and not proper cross examination. . . . The Court: She may answer. Mr. Sather: Exception. A. It was about ninety dollars. Q. (Mr. Abrams) Who paid it? Mr. Sather: To which we likewise object. The Court: Yes, that is objectionable."

Appellant charges that these questions were asked solely for the purpose of informing the jury that she carried liability insurance. We cannot see how the cost of repairs on the car or who paid for them was material to any issue in the case, since the appellant was not making any counterclaim for them. It is, however, going too far to assume that, from the questions and the answers made, the jury drew the inference that appellant carried liability insurance, or that their verdict was improperly influenced thereby. None of the cases cited by appellant warrants us in holding that, through misconduct of counsel, the jury in this case were informed that appellant carried liability insurance.

The question asked appellant as to whether she had, or was making, any claim for damages to her car, was not objectionable, and no error was committed by the trial court in overruling appellant's objection thereto.

Appellant, by her requested instruction 9, asked the court, in effect, to charge the jury that, if appellant held her arm out indicating her intention of making a left turn, she had performed her full duty, in the absence of a signal from respondent that he was about

to pass. Instead, the court, in instruction 22, told the jury that the exercise of reasonable care might require more; that, even though appellant gave such signal, they should consider whether, in the exercise of reasonable care, considering the traffic on the roads, the time of day and conditions of visibility, the appellant should have taken the additional precaution of looking to the rear before making the turn.

It must be borne in mind that statutory regulations relative to the conduct of drivers of motor vehicles do not attempt to define what reasonable care is. They set up certain rules of conduct, violation of which carries a presumption of negligence, but a compliance with which does not necessarily fulfill the obligation to exercise reasonable care under given circumstances. There are circumstances under which a compliance with the statute alone might be presumed, as a matter of law, to constitute reasonable care; and there are circumstances where such would not be the case.

Appellant testified that, seventy feet south of the Clearbrook intersection, she extended her arm to indicate a left turn, and held it extended until she started to make the turn. Under the evidence, the collision occurred at dusk, when it was dark enough to require lights. There was no traffic approaching the intersection on either road. We think, under these circumstances, it was not error to refuse appellant's requested instruction 9, or to give instruction 22.

Instruction 31 is complained of on the same ground as 22. It, in substance, charges the jury that, while the paramount duty of the driver of a motor vehicle is to keep a lookout ahead, and while he may assume that drivers of vehicles following from the rear will observe the laws of the road, he cannot entirely ignore such vehicles. This is merely a more general state-

ment of reasonable care than that contained in instruction 22, and might well have been made a part of it.

Particular complaint is made of instruction 31, in that it charged that such "driver (of the car ahead) must take all precautions and safeguards *for his or her own safety* and the safety of the persons in the approaching vehicle from behind, which a reasonably careful and prudent person would take under the same or similar circumstances." The words *"for his or her own safety"* are inapt, in that there was no issue here of injury to appellant, her car or its occupants, but the phrase does not inject a new issue, nor is it so entirely foreign to the issues as to be prejudicial.

Complaint is made that instructions 22 and 31 were inconsistent with instruction 11. The latter instruction charged the jury in general terms that the driver ahead may assume the driver in the rear will obey all proper signals given by the driver ahead and, before passing, will give timely warning of his intention so to do. This is a correct general statement, and instructions 22 and 31 do not conflict with it, but merely apply it to the facts of the present case.

It is contended that error was committed in refusing to give appellant's requested instruction 17, the substance of which was that it is the duty of the driver of the overtaking vehicle to strictly observe the law of the road, and, if respondent attempted to pass without so doing, he would be guilty of contributory negligence. The court set out in another instruction subdivisions 1, 2, 3, 4 and 5, of § 6362-41, Rem. Rev. Stat., being rules of the road relating to overtaken and overtaking vehicles. Then, in instruction 28, to which appellant also objects, the balance of requested instruction 17 was given in almost identical language as requested. Between the two instructions, the substance of requested instruction 17 was adequately covered.

It is contended that error was committed in the court's refusal to give appellant's requested instruction 23, the substance of which is that, if respondent was on the left side of the road "without reasonable excuse," he was guilty of negligence that would preclude recovery. There is no evidence, nor inference to be drawn from any evidence, to indicate that respondent drew over to the left side of the road for any purpose other than to pass appellant's car. He was where, for that purpose, the law required him to be. The assignment is without merit.

The refusal to give appellant's requested instruction 25 is assigned as error. The purpose of this requested instruction was to admonish the jury not to be influenced by sympathy or prejudice. The giving or refusal of such an instruction lies in the discretion of the trial court. *Lindsey v. Elkins,* 154 Wash. 588, 283 Pac. 447. We do not think the court abused its discretion in refusing to give appellant's requested instruction 25.

The court, in instruction 16, quoted a portion of Rem. Rev. Stat., § 6362-41, subd. 10, as follows:

"And it shall be the duty of every such person about to turn *from a standstill* or while in motion to give a timely signal from the left side of such motor vehicle, indicating the direction in which he intends to turn as follows: If he intends to turn to the left he shall extend his arm in a horizontal position from the left side of such motor vehicle for a reasonable length of time . . . " (Italics ours.)

The complaint is made that "from a standstill" injected an element not within the issues. It is true that, under the facts of this case, the words had no pertinency to any issue. But we do not think that they could have been misleading or in any way prejudicial. The assignment is without merit.

■ By instruction 23, the court, in substance, charged the jury that, if respondent was traveling at a speed in excess of forty miles per hour, he would *prima facie* be guilty of negligence, but nevertheless that would not prevent his recovery, if such excessive speed was not "a direct and proximate cause" of the collision. The substance of the instruction comes within the rule of *Van Cello v. Clark,* 157 Wash. 321, 289 Pac. 19. There it is said:

"The jury might well have been instructed that, if they should find that the accident would have occurred even though appellant had been driving his car at a lawful rate of speed and at a rate which the jury should find, in view of all the circumstances of the case, was not negligent, then, in that event, the speed at which they should find, as matter of fact, appellant's car was being driven, even if excessive, was not a proximate cause of the accident and the jury should not find against appellant upon the sole ground that he was driving at a rate of speed in excess of that fixed by law."

The use of the words, "a direct and proximate cause," does not correctly define contributory negligence. But the court had elsewhere told the jury that contributory negligence is such want of care on the part of the person injured "which materially and proximately contributes to the injuries complained of." Even though the instruction complained of was technically incorrect, the jury could not have been misled thereby, in view of the other instructions correctly defining contributory negligence.

■ By instruction 25, the court told the jury that the fact that there were four people riding in the Dodge coupe was a circumstance they might take into consideration in determining whether or not appellant was negligent. Under the facts in this case, the instruction was not erroneous.

Finally, instruction 33 is complained of. This merely tells the jury that a motorcycle is a lawful vehicle and its rights on the highway are the same as an automobile. Under the facts in this case, we think there was no prejudicial error in this instruction.

Error is assigned on denial of appellant's motion for new trial. This assignment is predicated upon the claimed errors assigned and heretofore discussed. It is therefore unnecessary to discuss this assignment further than to say the motion was properly denied.

Finding no error in the record, the judgment is affirmed.

TOLMAN, MAIN, and STEINERT, JJ., concur.

