[No. 2558-1.    Division One.    May 26, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. ALBERT WALKER, *Appellant.*

*Sam Peach, Hobart S. Dawson,* and *Craig Hayes,* for appellant (appointed counsel for appeal).

*David S. McEachran, Prosecuting Attorney,* and *William A. Gardiner, Deputy,* for respondent.

CALLOW, J.—Luther Durling died on July 4, 1973, from knife wounds inflicted by the defendant during a fight between the two at the Lighthouse Mission in Bellingham, Washington. The following day, the defendant was charged with murder in the first degree. He was convicted of the charge by a jury on August 16, 1973. After the filing of a notice of appeal, this court remanded the cause to the Superior Court on December 21, 1973, for hearings on the post-trial motions which had been filed. These hearings took place, findings and conclusions were entered, and it was found that the defendant appeared to be of sound mind prior to and during the trial and that he was competent to assist in his defense at the time of trial. *See* appendix.

### TRIAL

Error is claimed to have been committed during the trial when

(1) a psychiatric examination was not conducted prior to or during the trial;

(2) the trial court ruled before trial that no mention of the propensity of the deceased for acts of violence during his life would be admissible;

(3) the jury was not instructed on the law of manslaughter resulting from assault without premeditation or intent to kill;

(4) challenged instructions on self-defense were given;

(5) the jury verdict resulted from passion and prejudice;

(6) the prosecution was overreaching in the cross-examination of the defendant;

(7) the prosecuting attorney failed to advise the court or defense counsel that an interview of the defendant had been conducted and the interviewer had recommended an examination as to his mental capacity to stand trial.

1. *Should a psychiatric examination have been conducted before or during the trial?*

The record of the trial indicates that before and during the trial itself, the defendant was able to understand the proceedings against him and assist in his own defense. At an omnibus hearing held on Saturday, July 7, 1973, the defendant was represented by two attorneys who informed the court that they would claim the defendant acted in self-defense. One of the defense counsel stated:

> [I]nsanity will not be a defense. I would like the record to show that we discussed this, both [defense counsel], with the defendant this morning, and there will be no insanity defense raised.

Further, defense counsel stated that there would be no claim of incompetency to stand trial raised.

One of the motions raised by the defense at the conclusion of the State's case was a motion to preclude the prosecution from inquiring into all of the arrests shown on the defendant's FBI report. Defense counsel read down the various notations on the record and stated that, except for certain convictions thereon, there should not be any reference to the report by the prosecution. One of the entries on that report showed that the defendant had been sent to the Atascadero State Hospital in California in 1968 as "mentally ill." No apparent notice was taken of this entry at the time, and no other reference to the possibility of the defendant being insane or not competent to stand trial was raised during the trial in chief. The defenses pursued were that the homicide was excusable and the killing occurred in self-defense.

The 1973 legislature repealed prior statutes relating to criminal insanity (RCW 10.76.010-.080) and adopted chap-

ter 117, Laws of 1973, 1st Ex. Sess., effective July 1, 1973, and codified as RCW 10.77. Although RCW 10.77 was amended in 1974, the 1973 language is applicable to this crime and trial.[1]

The evidence known to the defense counsel and the trial court before and during the trial did not indicate that the defendant was insane or incompetent.[2] The record of the trial shows that the defendant rejected any plea of insanity

---

[1]The 1974 amendments are included in chapter 198, Laws of 1974, 1st Ex. Sess., effective May 6, 1974. The statutes applicable to the trial of this cause provided as follows in 1973:

RCW 10.77.030:

(1) Evidence of mental disease or defect excluding responsibility is not admissible unless the defendant, at the time of arraignment or within ten days thereafter or at such later time as the court may for good cause permit, files a written notice of his intent to rely on such a defense.

(2) Mental disease or defect excluding responsibility is a defense which the defendant must establish by a preponderance of the evidence.

Laws of 1973, 1st Ex. Sess., ch. 117, § 3(1), (2).

RCW 10.77.050:

No person who lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of mental disease or defect shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues.

Laws of 1973, 1st Ex. Sess., ch. 117, § 5.

RCW 10.77.060(1):

(1) Whenever a defendant has pleaded not guilty by reason of mental disease or defect excluding responsibility, or there is reason to doubt his fitness to proceed as a result of mental disease or defect, the court on its own motion or on the motion of any party shall appoint, or shall request the secretary to designate, at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant. For purposes of the examination, the court may order the defendant committed to a hospital or other suitable facility for a period of time necessary to complete the examination, but not to exceed fifteen days.

Laws of 1973, 1st Ex. Sess., ch. 117, § 6(1).

[2]For the purposes of this discussion, we see no reason to use the term "[m]ental disease or defect excluding responsibility" from the 1973 act rather than the terms "insanity" and "incompetent" from the 1974 act.

being raised in his behalf and that he assisted in the trial as would a rational man in possession of his faculties.

The report of the Whatcom County mental health coordinator would have brought the possibility of insanity or incompetence to the attention of the prosecution, defense counsel, and the court had the report been communicated to any of those parties, but there is nothing in the record to indicate that the report was so transmitted, or that anyone privy to the court proceedings perceived insanity or incompetence to be probable defenses. We do not fault the trial court for a failure to act on its own motion to hold pretrial hearings on the sanity or competence of the defendant when defense counsel stated that such defenses would not be raised and there was no indication before the court that such defenses should be raised. When the evidence is examined, as it must have appeared to the trial judge before and during the trial, we find no abuse of discretion in proceeding without conducting an evidentiary hearing into the sanity of the defendant or into his competence to stand trial. *State v. Johnston*, 84 Wn.2d 572, 527 P.2d 1310 (1974).

2. *Was it erroneous to exclude the arrest record of the victim showing prior acts of violence by the decedent during his life?*

Following the impaneling of the jury, the prosecution moved to prohibit any mention to the jury of the prior arrests of the victim. The FBI record of the victim showed arrests for crimes involving violence. The defense argued that this record should have been admissible to show the victim's violent propensity, but the defense did not offer to prove the reputation of the victim for violence. The defense did not offer to show that the victim had a reputation for violence known to the defendant, or that the defendant was aware of specific acts of violence committed by the victim. Proof of either of those circumstances would have been admissible as justifying forceful acts of the defendant in self-defense. *State v. Cloud*, 7 Wn. App. 211, 217-18, 498 P.2d 907 (1972). Likewise, the defense did not seek to introduce proof of the reputation of the victim for violence

to corroborate the defendant's claim that the deceased was the aggressor. The FBI report reflects isolated specific acts of violence by the victim, but standing alone it does not establish the reputation of the victim nor prove that the defendant was aware of past violent acts by the victim. The report was excluded properly. *State v. Cloud, supra.*

3. *Should the jury have been instructed on manslaughter?*

■ The defense did not propose an instruction on the lesser included offense of manslaughter, and, in fact, rejected the possibility when it was raised. It is not erroneous to fail to instruct on manslaughter as a lesser included offense within the crime of murder in the first degree when no request for such an instruction is made. *State v. Mayner,* 4 Wn. App. 549, 483 P.2d 151 (1971). When the evidence would support a finding of guilty on a lesser included offense and an instruction on the lesser included offense is proposed, then the instruction must be given, but not otherwise. RCW 10.58.020, 10.61.010; *State v. Stationak,* 73 Wn.2d 647, 440 P.2d 457 (1968); *State v. Gallagher,* 4 Wn.2d 437, 103 P.2d 1100 (1940); *State v. Rader,* 118 Wash. 198, 203 P. 68 (1922).

4. *Were the instructions on self-defense erroneous?*

■ The defense raises as a claim of error on appeal the absence of comment in the court's instructions on the alleged violent propensities of the deceased victim. This ground for claimed error was never presented to the trial court. The instruction given on self-defense was objected to at the conclusion of the presentation of evidence by appointed trial counsel on the basis that the instruction would make self-defense available only to those who were without fault in occasioning an affray. This ground of objection is not being pursued on appeal. We will not consider objections to the giving of instructions raised on appeal when the basis for such objections was not brought to the attention of the trial court. *Palmer v. Waterman S.S. Corp.,* 52 Wn.2d 604, 328 P.2d 169 (1958); *Bombardi v. Pochel's Ap-*

*pliance & TV Co.*, 9 Wn. App. 797, 515 P.2d 540 (1973), *modified*, 10 Wn. App. 243, 518 P.2d 202 (1973).

Further, the instruction objected to is not set out in the appellant's brief. CAROA 42 (g) (1) (iii) and 43 require an instruction to be set out in the brief in full if an objection is raised to its sufficiency. This was not done, no issue is raised that the self-defense instruction violated the constitutional rights of the defendant, and therefore we may not consider the claimed error. *State v. Lake*, 7 Wn. App. 322, 499 P.2d 219 (1972); *State v. Williams*, 4 Wn. App. 411, 481 P.2d 918 (1971).

5. *Should the verdict be set aside as being the result of passion and prejudice?*

The trial court admonished the jury to disregard statements made by witnesses who categorized the death as a murder. The admonitions given by the trial court were appropriate to remind the jury of their duty to act disinterestedly and impartially. *Meabon v. State*, 1 Wn. App. 824, 463 P.2d 789 (1970). Additional admonitions were discretionary with the trial court. *Curtis v. Perry*, 171 Wash. 542, 18 P.2d 840 (1933). The usual instruction was given to the jury to reach their verdict on the evidence and not be influenced by prejudice. The record does not affirmatively show that the verdict of the jury was reached because of improper influences upon them. Even though the verdict was returned within 4 hours, this is not sufficient to support a conclusion that substantial justice has not been done. *See Casey v. Williams*, 47 Wn.2d 255, 287 P.2d 343 (1955).

6. *Did the prosecution commit error by overreaching in cross-examination of the defendant?*

The defense raised a general complaint about the length and intensity of the cross-examination of the defendant. We find no error in the latitude granted the prosecution. As stated in *State v. Jeane*, 35 Wn.2d 423, 431, 213 P.2d 633 (1950):

It is the general rule in both civil and criminal cases that the cross-examination of a witness is limited to the scope of the direct examination. Within its discretion, the

trial court can grant considerable latitude in cross-examination. When a defendant in a criminal case takes the stand, he is subject to all the rules relating to the cross-examination of other witnesses; . . .

*See also* RCW 10.52.040; *State v. Etheridge,* 74 Wn.2d 102, 443 P.2d 536 (1968).

The claim of error on the part of the trial court is general and amorphous without objection being raised to specific questions said to have constituted error by being asked, or because of the answers elicited. The assignment does not pinpoint any action of the prosecution in the conduct of the cross-examination that can be said to have been wrongful. There is no merit in the contention.

7. *Did the prosecution withhold information indicating the defendant was incompetent?*

If the prosecution knows about available evidence which tends to negate guilt, mitigate the degree of the offense or which might reduce the punishment, such evidence may not be withheld. (CPR) DR 7-103(B); (CPR) (EC 7-13). *See Giles v. Maryland,* 386 U.S. 66, 17 L. Ed. 2d 737, 87 S. Ct. 793 (1967); *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). *See also Discovery and Disclosure—Dual Aspects of the Prosecutor's Role in Criminal Procedure,* 34 Geo. Wash. L. Rev. 92 (1965); Note, *The Prosecutor's Duty to Reveal Evidence to the Defendant,* 74 Yale L.J. 136 (1964); Note, *The Duty of the Prosecutor to Disclose Exculpatory Evidence,* 60 Colum. L. Rev. 858 (1960). It is not claimed that any law enforcement officer suppressed any evidence about the mental condition of the defendant. The notes of the mental health coordinator indicated that the defendant was suspicious, moody, easy to anger, and "loose thinking," but do not state that the defendant was insane or incompetent. Further, we find nothing in the record to indicate that the mental health coordinator recommended that a psychiatric examination of the defendant be conducted prior to trial, although defendant so asserts. This is not a case of the use of false testimony or the withholding of evidence by the prosecution, or the frus-

tration of defense efforts to obtain information. The trial court's findings are consistent with the conclusion that neither the court nor counsel was aware before the verdict that the defendant might have been insane when the crime was committed or incompetent to stand trial, and with the conclusion that the prosecutor had no greater knowledge of the background of the defendant than did defense counsel. The record does not show a probability that knowledge by defense counsel of the mental health coordinator's report would have altered the result of the trial, and therefore the defendant was not prejudiced. *Rhinehart v. Rhay*, 440 F.2d 718 (9th Cir. 1971), *cert. denied*, 404 U.S. 825 (1971).

### POST-TRIAL HEARING

Error is claimed to have been committed at the post-trial evidentiary hearing when

(1) the trial judge did not disqualify himself;

(2) the right to a jury trial on the issue of competence to stand trial was denied;

(3) a psychiatrist was allowed to testify as to the defendant's sanity at the time of trial without having personally examined the defendant outside of the court and experts were not appointed to examine the defendant and submit a written opinion to the court;

(4) the defendant was not permitted to attend the hearing on his competence to stand trial;

(5) the defendant was found to have been competent to stand trial upon insufficient evidence;

(6) the trial court failed to rule on whether the defendant had newly discovered evidence entitling the defense of mental irresponsibility on a new trial of the murder charge;

(7) the hearing on the competence of the defendant to stand trial was not held before trial; and

(8) the defendant's FBI report and arrest record was not admitted in evidence.

We remand the cause to the trial court with directions that the defendant be brought personally before the court for a further hearing on the issue of his competence to stand trial. Our action in remanding the cause for a rehear-

ing of this issue makes a consideration of some of the issues raised by the defendant necessary. Those issues raised which are not discussed have been answered by this opinion or may not arise again. The first two assignments of error concern the procedures to be followed on the rehearing.

1. *Should the trial judge have disqualified himself from presiding at the post-trial competency hearing?*

■ The statute provides that when there is reason to doubt the sanity of a defendant, the court shall conduct a hearing on a motion for acquittal on that ground. Laws of 1973, 1st Ex. Sess., ch. 117, § 8, effective July 1, 1973, amended effective May 6, 1974. *See* RCW 10.77.080. The defendant did not bring his motion pursuant to CrR 7.7. The cause was remanded to the Superior Court for hearing on the defendant's motion brought under CR 60(b)(2) for vacation or modification of judgment, or for a new trial. A motion for a new trial in a criminal cause on the ground of newly discovered evidence which could not have been timely discovered should have been made pursuant to CrR 7.6, and not under the civil rule CR 60(b)(2) or (3). The order of remand from this court directed the trial court to hear and consider the defendant's motions and such newly discovered evidence as might be presented at the hearing. This procedure has been followed previously with approval. *State v. Pope*, 73 Wn.2d 919, 442 P.2d 994 (1968). Any trial judge hearing a motion for a new trial brings to the hearing on the motion his knowledge from having presided at the trial. He does not participate in the process as a witness, as argued by the defense, citing *White v. Rhay*, 266 F. Supp. 270 (E.D. Wash. 1966),[3] but as the adjudicator deciding, in retrospect, if error requiring a retrial was committed. The motions were brought as motions for new trial, not as motions for post-conviction relief, and the trial judge was the proper one to rule upon those motions.

2. *Did the defendant have a right to have a jury decide the issues raised on the post-trial hearing?*

[3]*Affirmed*, 385 F.2d 883 (9th Cir. 1967).

The defendant asserts that he was entitled to have the issue of his competency to stand trial submitted to a jury at the post-trial hearing under article 1, section 21 of the Washington State Constitution.

The right of an allegedly sane person to trial by jury in a civil commitment proceeding is fundamental under the constitutional provision. *In re Quesnell*, 83 Wn.2d 224, 517 P.2d 568 (1973); *In re Ellern*, 23 Wn.2d 219, 160 P.2d 639 (1945). The function of the civil commitment proceeding differs, however, from the function of a hearing into the competence of a criminally accused person to stand trial. In the civil commitment proceeding, the ultimate inquiry of the triers of the fact is whether the person falls within that definition of "mentally ill" which requires a deprivation of liberty by commitment, while the evidentiary hearing into the competence of an accused to stand trial is only an inquiry into whether the mind of the accused can cope with trial and whether the accused can assist in his defense.

The civil commitment proceeding presents the fundamental decision regarding loss of liberty to a jury, if demanded, and the ultimate decision regarding insanity at the time of the commission of a charged crime is a jury question also. It is only the determination of whether a defendant is competent to participate in trial that is the responsibility of the trial judge. Inherent within this determination that an accused is or is not competent to stand trial is a tacit finding that the accused can or cannot rationally enter or waive a plea of not guilty by reason of insanity. *See State v. Schrader*, 135 Wash. 650, 655, 238 P. 617 (1925), 243 P. 10 (1926).

The format presenting the issue of competence to stand trial to the court, whether held before or after trial, has been approved in *State v. Tate*, 74 Wn.2d 261, 444 P.2d 150 (1968); *Young v. Smith*, 8 Wn. App. 276, 505 P.2d 824 (1973); *State v. Tate*, 1 Wn. App. 1, 458 P.2d 904 (1969). The determination of capacity to face trial is established as the discretionary function of the trial judge. *State v.*

*Thomas,* 75 Wn.2d 516, 452 P.2d 256 (1969); *Young v. Smith, supra.* The constitutional right to trial by jury is not denied by placing the decision on whether the defendant is competent to participate in a trial upon the court.

We turn to the fourth claim of error assigned to the post-trial proceedings, which is dispositive of the cause at this juncture.

4. *Was it error to conduct the post-trial hearing without the defendant being present?*

Counsel for the defendant requested that the defendant be personally present at the hearing and objected to his absence. In spite of objections, further evidence was elicited from witnesses concerning the competence of the defendant to stand trial. Error is assigned to the failure to return the defendant to Whatcom County for the hearing.

■ Under article 1, section 22 of the Washington State Constitution, a criminally accused has the right to appear and defend in person or by counsel, to testify in his own behalf, and to meet the witnesses against him face to face. The right is also protected by the sixth amendment to the United States Constitution. *See* J. Cook, *Constitutional Rights of the Accused* § 5, at 18 (1974).

RCW 10.46.120 reads as follows:

> No person prosecuted for an offense punishable by death, or by confinement in the penitentiary or in the county jail, shall be tried unless personally present during the trial.

*See Seattle v. Roberson,* 20 Wn.2d 727, 147 P.2d 818 (1944). Hand in hand with this right is the right of every person accused of crime to meet the witnesses against him face to face. RCW 10.52.060. The case of *State v. Greer,* 11 Wash. 244, 39 P. 874 (1895), stated, without more, that the motions for a new trial and in arrest of judgment were properly heard by the court in the absence of the defendant and that, "even if she had a right to be present, it was waived by . . . her counsel . . ." *State v. Greer, supra* at 248. After the *Greer* case came *State v. Hager,* 157 Wash. 664, 290 P. 230 (1930), which held that a defendant need

not be present at the hearing on a motion for new trial where oral testimony was not taken and an attempt was made to impeach a jury verdict by affidavits. Finally, in point of time between the *Greer* and *Hager* decisions, came *State v. Ward*, 135 Wash. 482, 238 P. 11 (1925), and *State v. Ward*, 139 Wash. 196, 246 P. 1119 (1926), without citing *State v. Greer*. The second *Ward* case said that in the first *Ward* case:

> The judgment was reversed because of prejudice to appellant's rights in the taking of adverse testimony, on a motion for a new trial, without giving the appellant notice and opportunity to be present in person or by counsel.

*State v. Ward*, 139 Wash. at 196. Notice of the hearing on a motion for new trial is ineffective of itself to satisfy the right to personal presence, confrontation, and to examine witnesses whose testimony can affect substantial rights of a defendant. Therefore, in this jurisdiction as in others, an accused has a right to be present at all stages of the trial where his substantial rights might be affected, and evidence should not be taken in his absence. *State v. Ward, supra. See also Hopt v. Utah*, 110 U.S. 574, 28 L. Ed. 262, 4 S. Ct. 202 (1884); *Chicago v. Carson*, 342 Ill. App. 203, 96 N.E.2d 103 (1950); *People v. Medcoff*, 344 Mich. 108, 73 N.W.2d 537 (1955); Annot., 69 A.L.R.2d 836 (1960). An accused need not be present during deliberations between court and counsel or during arguments on questions of law. *United States v. Sinclair*, 438 F.2d 50 (5th Cir. 1971); *State v. Voshell*, 247 Ore. 534, 430 P.2d 1010 (1967); *Ramer v. State*, 40 Wis. 2d 79, 161 N.W.2d 209 (1968), *cert. denied*, 394 U.S. 989 (1969).

The presence of counsel at the hearing was insufficient to satisfy the mandate of the constitutions and the statutes. The defendant had the right to participate and be present to contradict the witnesses who testified and to assist counsel by bringing to his counsel's attention matters which might be known only to the defendant. *State v. Jackson*, 495 S.W.2d 80, 84 (Mo. App. 1973), observed:

[T]he right of confrontation and of cross examination cannot be accomplished by either the defendant or his counsel *alone.* Counsel could "confront" a witness endlessly without accomplishing the constitutional objective and the defendant would rarely be capable of any effective cross examination. *Both* defendant and counsel are necessary to turn the spotlight of truth and moral suasion on a witness whose testimony may mean the difference between life and death, freedom or confinement, innocence or guilt.

The evidentiary hearing on the competence of the defendant to stand trial was an essential part of the trial. He had the right to be present in person. *United States v. Ashe,* 478 F.2d 661 (D.C. Cir. 1973).

Affirmed in part, remanded for further proceedings consistent with this opinion.

SWANSON and ANDERSEN, JJ., concur.

Petition for rehearing denied September 29, 1975.

Review denied by Supreme Court November 24, 1975.

APPENDIX

Findings of fact entered by the trial court following the post-trial hearings stated in part:

**2.**

An Omnibus Hearing was held on July 7, 1973, at the request of defense counsel, and although defense counsel had no reason to believe Mr. Walker was insane, a written plea of not guilty by reason of mental irresponsibility was prepared solely to preserve the record. Mr. Walker objected to such a plea and the court was advised that there would not be a defense of insanity and there would also be no claim of incompetency to stand trial.

**3.**

Judge Marshall Forrest presided at the Omnibus Hearing and noted nothing unusual about the defendant's responses.

**4.**

Mr. Walker cooperated with his attorneys and, except for the rejection of the insanity defense, always followed their recommendations. His statements concerning the circumstances surrounding the homicide were consistent and seemed quite accurate. Although he sometimes used wrong words, his way of speaking did not hinder trial preparation.

**5.**

On or about August 10, 1973, defense counsel discovered that Mr. Walker was confined at Atascadero State Hospital, California, as

mentally ill in January, 1968. This information was not taken by either defense attorney as any indication Mr. Walker was not competent to stand trial, due to their previous contact with him.

6.

Defendant's trial counsel are both of the opinion that Mr. Walker understood the nature of the proceedings against him and assisted them in the preparation of the facts relating to the defense of accident or self defense, which were presented at the trial.

7.

The defendant appeared to be calm, alert and attentive during the trial and seemed to fully understand the questions posed during the direct and cross-examination.

8.

Medical records received from Atascadero State Hospital, California show that Albert Walker was confined there on January 10, 1968, with an admitting diagnosis of schizophrenic reaction, paranoid type. He was transferred to Camarillo State Hospital, California, on May 19, 1971, and a quarterly progress note on August 25, 1971, showed that he was then in fairly good remission and receiving no medication except Maalox for a stomach condition. Mr. Walker was discharged from Camarillo as improved on October 1, 1971, and his release summary indicates that he was free of delusions and his intellectual functions were normal. He was given a two week supply of Thorazine and prescriptions for this drug, and was advised to seek follow up treatment at his local health center.

9.

The defendant received no medication other than aspirin when he was in the Whatcom County Jail prior to his trial, and the jailers noticed no unusual or bizarre behavior on his behalf. However, complaints were received from other prisoners that Mr. Walker kept them awake by snoring and mashing [sic] his teeth, and consequently Miss Nancy Metzler, the Whatcom County Mental Health Coordinator, interviewed the defendant on July 19, 1973. She found him to be suspicious, with rapid mood shifts, easy to anger and with loose thinking.

10.

Mr. Walker began to exhibit bizarre behaviour at or shortly after his confinement in the Reception Center at Shelton in September, 1973.

11.

Subject to some individual qualifications, Drs. Rehngren, Allison, Wing and Kronenberg, who testified at the hearing of this matter, expressed the opinion that Albert Walker could understand the nature of the proceedings against him and assist with the preparation of facts for his defense. Drs. Wing and Allison further felt that Mr. Walker would not make a rational decision as to the propriety of a legal defense of mental irresponsibility.

12.

Dr. Kronenberg reviewed the defendant's statement to the police

and his testimony at trial and found them to be coherent and rational with no evidence of thought disorganization. He further found that in his opinion the defendant was mentally competent to stand trial.

13.

The expert witnesses who testified, that in their opinion the defendant lacked competence to stand trial, examined the defendant in a prison environment after the stress of trial and sentencing, and formed their opinions without any consideration of the nature and content of the testimony the defendant gave at the trial.

14.

Mr. Walker suffers from chronic schizophrenia, paranoid type. That the nature of said illness is dynamic rather then [sic] static and within the broad range of schizophrenia, the degree of severity may run from acutely psychotic, at which time a person would not be competent to stand trial, to good remission with few or no symptoms, at which time a person would be competent to stand trial.